ANNIE V. KELLEY *vs.* W. D. QUIMBY AND COMPANY,
INCORPORATED & another.

Suffolk.    March 12, 1917. — May 25, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* In maintaining show-case.

*It seems* that one having the privilege of selling candy in a store under a contract
with the proprietor and using there a show-case supplied by the proprietor,
which the proprietor has agreed to keep in repair, owes the duty to his cus-
tomers to use reasonable care to protect them from injuries due to defects in
the show-case arising from want of repair.

In an action against one engaged in the business of selling candy in the store of
another under a contract with the proprietor, for personal injuries sustained by
reason of a piece of glass three or four inches wide and an inch or two thick,
which owing to the displacement of a bracket that supported it had become
detached from the show-case used by the defendant, falling upon the plaintiff's
foot when she was standing at the defendant's counter waiting to have delivered
to her some candy that she had bought from the defendant, if there is nothing
to show when the bracket had been forced from the position it originally was
in nor how long before the accident it was out of place, and there is nothing
about the appearance of the bracket from which an inference can be drawn as
to how long it had been out of its original position, and no evidence that the
defendant or his servant knew of any defect, there is no evidence of negligence
on the part of the defendant, and he is entitled to have a verdict ordered for him.

TORT, originally against W. D. Quimby and Company, Incor-
porated, a corporation, and William D. Quimby, for personal
injuries sustained by the plaintiff on June 20, 1913, by reason of
a heavy piece of glass, which had become detached from the
candy show-case of the defendants in the Henry Siegel Com-
pany's store in Boston, falling upon the plaintiff's right foot.
Writ dated March 10, 1914.

Later the plaintiff discontinued her action against the W. D.
Quimby and Company, Incorporated, leaving William D. Quimby,
individually, as the sole defendant.

In the Superior Court the case was tried before *Chase,* J.   The
evidence is described in the opinion.   At the close of the evidence
the defendant asked the judge to order a verdict for him.   The
judge refused to do so, and submitted the case to the jury.

In the course of his charge the judge instructed the jury as follows:

"The question is in this case, this element of it, how long had it [the defect in the show-case] existed. Had he [the defendant] had, as a man who was bound to exercise reasonable care for the safety of the people whom he had invited there, a reasonable opportunity to discover this defect, if it existed? And that involves, as I said a moment ago, the question of duration of time during which the defect had existed. When had this defect arisen? Who was responsible for the condition? Was the attention of the defendant Quimby called to this? If it wasn't, should it have been? If the defect existed when he began business there that morning, should he or some of his employees there whose duty it was — as they have testified — to look out for the counter and clean it, have noticed it? And having noticed it, should they have reported it? Those are the questions.

"Now, if you find that the place was not reasonably safe, and if you find that Mr. Quimby or his employees knew it or ought to have known about it in the exercise of reasonable care for the safety of their customers, then the question comes, Was the defendant negligent in not warning the plaintiff of this defect?"

The defendant excepted to the part of the charge in which the judge "began the sentence, 'If the defect existed there that morning,' something like that."

The jury returned a verdict for the plaintiff in the sum of $850; and the defendant alleged exceptions.

*T. J. Boynton*, for the defendant, W. D. Quimby.

*W. Flaherty*, for the plaintiff, submitted a brief.

CROSBY, J. This is an action to recover for personal injuries caused by the falling of a piece of glass upon the plaintiff's right foot. The accident occurred in the store of Henry Siegel Company in Boston, on June 20, 1913.

The defendant, on the date in question, had the privilege of selling candy in the store under a contract with the Henry Siegel Company, by the terms of which the latter furnished the show-case, counter and fixtures. These were located in the aisle of the store. The outer side of the show-case where customers stood was constructed of "pieces of heavy glass placed in and supported by brackets attached to" the show-case. The glass stood on edge.

The plaintiff testified that while standing at the counter waiting to have delivered to her some candy she had ordered, a piece of glass fell upon her foot and caused the injuries complained of. She further testified that the piece of glass that fell was three or four inches wide and an inch or two thick. The only evidence of the appearance of the glass or the fixture which was furnished to keep it in place, after the accident, was the testimony of one Dickey, who testified that she heard the glass fall, "then looked to see why, what would cause it to fall. 'The glass had been there a long time and there had been no accident.' The bracket was over to one side. It was strained from the position it originally belonged in."

While it is not clear from the agreement who was to make repairs, if needed, upon the show-case and counter, there was evidence tending to show that the parties thereto understood that the repairs were to be made by the Henry Siegel Company and that "anything in the line of repairs was all done through the office of the superintendent of the Henry Siegel Company." We do not deem it decisive of the issue involved in the case at bar to determine upon whom rested the duty of making repairs. The contract above referred to gave to the defendant permission to carry on the business of selling candy at the Siegel store in accordance with its terms. The defendant in the conduct of his business could be found to have invited customers to purchase the wares which he had to sell, and it was the duty of the defendant to use reasonable care to protect such customers from harm. Accordingly if the bracket which held the glass in the show-case in position became defective or out of repair, and was liable to cause injury to persons rightfully on the premises, it was the duty of the defendant to repair it, or cause it to be repaired by the Henry Siegel Company, provided the defendant knew of its defective condition or might have known of it by the exercise of reasonable care.

The fact that the plaintiff was injured by reason of the glass falling upon her foot and that the fall was due to a defective condition of the bracket is not sufficient to entitle her to recover; she must go further and prove that her injuries were caused by some negligence on the part of the defendant. The record fails to show when the bracket had been forced from the position it originally was in; nor does it appear how long before the accident

it was out of place. Whether the defective condition existed for a few minutes before the accident or for a longer period of time, is wholly a matter of conjecture. There was nothing about the appearance of the bracket from which an inference could be drawn as to how long it had been out of its original position. There was no evidence that the defendant, or his servants or agents, knew of the defective condition or that the glass might fall, nor is there any evidence to show that he or they might have been informed of it by the exercise of reasonable care.

While there was ample evidence that the plaintiff was in the exercise of due care, and no contention is made to the contrary, still the record fails to show, for the reasons stated, any negligence on the part of the defendant. The exceptions must be sustained and judgment should be entered for the defendant in accordance with St. 1909, c. 236.

*So ordered.*