EDWARD McCLOSKEY, An Infant, by LEO McCLOSKEY, His Next Friend, v. HARRY KOPLAR and SAM KOPLAR, Appellants.—46 S. W. (2d) 557.

Court en Banc, February 6, 1932.

528

*Jones, Hocker, Sullivan & Angert* and *Robert L. Aronson* for appellants.

*Mark D. Eagleton, Everett J. Hulliverson* and *Hensley, Allen & Marsalek* for respondent.

ELLISON, J.—Action for damages for personal injuries. A radiator which had been detached from the heating system in the defendants' moving picture theater and left standing in an aisle against the wall, tipped over and broke the plaintiff's leg. He was twelve years old at the time. The jury's verdict was for $15,000. After enforced *remittitur* in the circuit court judgment was entered for $11,000, but the defendants nevertheless have appealed. The errors assigned are that the evidence did not make a case under the *res ipsa loquitur* doctrine, that the respondent's instructions are faulty, and the judgment still too large.

For the purposes of this appeal, at least, it is admitted the petition states a *res ipsa loquitur* case. After averring the appellants were engaged in operating the theater and had invited the public to patronize the same, and that respondent had, pursuant to said invitation, paid the admission charge and became a patron, the pleading alleges "that while he was passing along an aisle or passageway in the balcony of said theater a heavy radiator adjacent thereto fell over and upon and against him, injuring him as hereinafter stated; that said radiator was at all times in the possession and control of defendants, and overturned as aforesaid as a direct and proximate result of the negligence and carelessness of defendants, directly thereby causing" various specified injuries to the plaintiff's leg and ankle, etc. The answer was a general denial.

The radiator was of cast iron, weighed about 200 pounds and in shape was tall and narrow. It rested on a level cement floor on four short legs and when in position as a part of the heating system stood

in a recess or wooden frame against the north wall at the northeast corner of the balcony. Above the radiator in the same frame was a ventilating fan. An iron pipe conducting the heating medium, steam or hot water or whatever it was, projected up through the cement floor and was attached to the radiator by a screw coupler or union. Another pipe, apparently, led off from the radiator. All this is shown by the evidence for appellants in connection with a photograph which they introduced and have brought up with the record.

At the time of the accident the radiator had been uncoupled from the pipes and moved out of the frame to a position against the east wall at right angles to and a few feet south of its former location. Thus placed it was parallel with and three or four feet back of the last seat in the balcony, with an open space or aisle of that width in between. When and by whom the shift was made is a disputed question. A week before the injury a heating company had been overhauling the radiators in the theatre, and after the accident the radiators downstairs were found to be disconnected. There was testimony from one witness for respondent that he had seen the radiator which figures in this case standing by the east wall a week before the accident. Another witness, who was an usher at the theater "and helping the manager around about different little things," said he saw the radiator standing inside the frame Christmas week, but it was loose and wabbled when he leaned against it. On New Year's night, three days before the accident, he saw it again. That time it had been moved and was by the east wall. The picture machine operator, who had continued in that employment from the time of the accident to the time of the trial, testified he saw the radiator standing by the east wall four or five days before the respondent was injured.

Various witnesses for appellants connected with the theater gave testimony tending to show the radiator had been in its proper position in the frame underneath the ventilating fan at all times when they observed it, one saying as late as 6:30 the evening of January 4, which was less than an hour before the accident. The manager said he gave no orders for its removal, and told of overhearing an unknown eyewitness say just after the occurrence that some boys had dragged the radiator out and used it for a seat. But while there is conflict in the testimony as to when the radiator was moved and no showing except the vague hearsay evidence aforesaid as to who did it, yet the fact is clearly established by the evidence for both parties that the radiator was standing loose and disconnected in an unusual location against the east wall when it tipped over and injured the respondent.

The respondent was hurt about 7:30 P. M. He and a companion, Alfred Beste, were attending the picture show. After they had been there nearly an hour, finding "it was kind of stuffy and hot," they went to the back of the balcony by the ventilating fan to cool off. There were ten or a dozen people in the cross-aisle along the east wall, but none at the north end where the fan was. The two boys remained there about five minutes and started to return to their seats. Beste was a step or two ahead and passed the radiator without mishap, but it fell forward in the aisle as the respondent went by and pinned him to the floor, breaking his left leg. The fall was not explained by any witness. The respondent said he was three feet from the radiator when it tipped over; that no other person was near; that he hadn't been sitting on it, and was not aware of having bumped it or touched it. Beste's evidence was the same.

I. The appellants' first assignment of error is that the evidence did not warrant the submission of the case on the res ipsa loquitur theory. As a basis for that contention two propositions of law are advanced:

(1) The law imposes on the proprietor of a public amusement place operated for profit only the duty to exercise ordinary care to maintain the premises in a reasonably safe condition in view of the particular circumstances; he is not an insurer of the safety of its patrons: and where a defective condition exists, before the proprietor can be held liable therefor it must be shown either that he created or caused the condition, or that he had actual knowledge thereof reasonably in time to have remedied the same or otherwise have prevented the injury, or that the defect had existed for such length of time as to charge him with knowledge and the duty to repair or warn. [King v. Ringling, 145 Mo. App. 285, 293, 130 S. W. 482, 484; Purdy v. Loew's St. Louis Realty & Amus. Corp., 220 Mo. App. 854, 860, 294 S. W. 751, 753; Oakley v. Richards, 275 Mo. 266, 276, 204 S. W. 505; Berberet v. Electric Amus. Co., 319 Mo. 275, 281, 283, 3 S. W. (2d) 1025, 1029.]

(2) In general and on principle the doctrine res ipsa loquitur does not apply except when: (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. [5 Wigmore on Evidence (2 Ed.), sec. 2509, p. 498; L. R. A. 1917E, p. 7, note; 45 C. J. secs. 768 to 781, pp. 1193 to 1214.]

Reasoning from these premises, appellants concede the falling of a radiator from its usual or installed location in a building might be

an occurrence such as would import carelessness on the part of those in charge; but they assert this is not true when the evidence shows, as it does in this case, that the radiator had been detached from its fastenings and was standing loose in an unusual position. In these circumstances, they say, it might readily tip over without negligence on the part of anyone, or at least on the part of the owners; and it might recently have been moved to its dangerous position by some third person without their actual or constructive knowledge, especially in a theatre to which crowds resorted hourly. So, appellants maintain the casualty and attendant circumstances in this case, unassisted by other evidence, do not raise an inference of negligence against them, and therefore fail to come within the general category of occurrences to which the doctrine of *res ipsa loquitur* may apply; and that to hold otherwise is to convict them of presumptive negligence without proving they had real or constructive notice of the dangerous situation—contrary to the legal rule first stated above.

Along this same line it is also pointed out the testimony adduced by respondent shows only that the radiator had been seen standing detached and in an unusual location a week to three days before the accident. No witness on that side of the case saw it afterwards until it fell on the respondent, i. e., during the intervening period of three days next preceding that event. All the evidence for appellants was positive that the radiator was in its proper position at all times up to an hour before the boy was hurt. Appellants therefore contend there is no proof that the radiator remained continuously out of place for any substantial length of time next before it fell unless an inference to that effect be drawn from the facts observed by respondent's witnesses earlier in the week; and they say if that inference be allowed and used as a basis for the further inference of negligence under the doctrine *res ipsa loquitur*, the result is a piling of inferences in violation of well settled law, citing 45 Corpus Juris, p. 1146, sec. 738; Kelley v. W. D. Quimby & Co., 227 Mass. 93, 116 N. E. 409.

In our opinion appellants' theory as set out in the foregoing paragraphs cannot be sustained, though we concede the general propositions of law on which authority is cited, are sound. This case is of a class in which the doctrine of *res ipsa loquitur* is frequently invoked—so far as such cases are susceptible of classification. It comes within the category of *falling objects* to which the rule is very generally applied. [45 C. J. 1201, sec. 771; 20 R. C. L. 191, sec. 158; 22 A. L. R. pp. 617, 673, note; L. R. A. 1917 E, p. 201, note.] In Carlson v. Swenson, 197 Ill. App. 414, a radiator set in the wall of the lobby of a theater was so insecurely fastened that it fell, injuring a boy there looking at the pictures and advertisements. It was held the facts raised an inference of negligence on the part of the pro-

prietor. (In that case, it is true, the radiator was in its usual position.) And in Schmidt v. Stern, 196 N. Y. Supp. 727, 119 Misc. 529, where an owner in general control of a building allowed a contractor to deliver radiators long before the time for installation, and a radiator originally placed on its side by the contractor's employees was moved (when and by whom was not shown) and left standing on a heap of rubbish, whence it fell upon and injured a workman, it was held the rule of *res ipsa loquitur* applied as against the owner.

Does the fact that the radiator in the instant case was standing detached and in an unusual position take the case out of the rule? We think not. Ordinarily radiators are not permitted thus to become potentially dangerous instrumentalities in crowded theatres if those in charge use due care. The radiator was the property of the appellants and was a part of the equipment of the theater under their control and management. They were prima-facie responsible for the dangerous situation, whoever may have moved the radiator. As said in the Schmidt case last cited "the same rule, *res ipsa loquitur*, that shifts the burden of evidence upon the point of negligence, also shifts the burden of evidence upon the point of the identity of the party legally responsible, and calls upon the owner to overcome the presumption against it arising out of its ownership, custody and general control of the building."

And the requirement that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed. [45 C. J. 1216, sec. 781.] In Van Horn v. Pacific Refining & Roofing Co., 27 Cal. App. 105, 148 Pac. 951, an owner who had employed a contractor to install certain machinery in his building, agreed to lay and connect steam pipes therewith. He was notified by the contractor to cap a steam pipe located close to where a machine was being put in and did so, but while a workman was engaged at his labors near by the cap blew off and he was scalded. The owner contended the doctrine of *res ipsa loquitur* did not apply, because many persons other than his own employees had access to that part of the premises, and some of them might have struck or tampered with the pipe, causing the cap to loosen. The California case held otherwise, saying, "the rule . . . to the effect that the exclusive control and management of the appliance causing the injury must be shown to have been in the defendant, must be taken to refer to the right of such control; otherwise . . . the doctrine of *res ipsa loquitur* could seldom if ever be given application." This decision is referred to approvingly in a recent California case, Wright v. So. Counties Gas Co., 102 Cal. App. 656, 283 Pac. 823, 827.

536

Similarly, on the question of notice, this court in Kinchlow v. K. C., K. V. & W. Ry. Co. (Mo. Sup., Div. 1), 264 S. W. 416, 420, was dealing with a set of facts where a passenger riding on a street car was injured when it came into collision with another street car owing to defective brakes on the latter. An instruction for the plaintiff authorized a recovery if the jury found the brakes were defective and that the defendant was negligent in operating the car in that condition. The defendant objected because the instruction made no requirement that the jury find the defendant had notice of the defective condition of the brakes prior to the accident. The case was a *res ipsa loquitur* case and this court held: "The omission in said instruction to include notice to defendant of the defective brakes was supplied by such legal presumption of defendant's negligence which remained and operated throughout the case in plaintiff's favor, there being no countervailing testimony." In our opinion the case was a proper one for the application of the doctrine *res ipsa loquitur*.

II. Respondent's principal instruction, omitting preliminary matters, was as follows:

"If you find . . . that while therein plaintiff was passing along an aisle or passageway in the balcony of said theater and that there was a heavy radiator in said theater adjacent to said aisle or passageway, and that said radiator was in possession and control of defendants, and that said radiator fell over and upon plaintiff and injured him as he was passing thereby, then the court instructs you that the presumption is that the falling over of said radiator was occasioned by some negligence of defendants, their agents or servants, and the *burden of proof* is cast upon defendants to rebut this presumption of negligence and show by a *preponderance* of the evidence that the falling over of said radiator was not caused by negligence of defendants, their agents or servants, and unless you further find from the evidence that the falling over of said radiator could not have been prevented by defendants, their agents or servants, by use of ordinary care, then your verdict must be in favor of plaintiff and against defendants." (Italics ours.)

Appellants criticize this instruction because it failed to require a finding that they knew or in the exercise of ordinary care should have known the radiator was disconnected and out of its usual position in time to have prevented the injury. They insist that even if they recede from their first position and concede the doctrine of *res ipsa loquitur* has a place in the case at all, it could only be after a separate, preliminary finding of the foregoing as basis for the application thereof. This raises the same question discussed in para-

graph I of this opinion. The assignment is ruled against the appellants.

III. The next assignment is that the instruction, as set out above, was erroneous in declaring the presumption (or inference) raised by the doctrine of *res ipsa loquitur* shifted the burden of *proof* and required the appellants to exculpate themselves from the charge of negligence by a *preponderance* of the evidence. Their theory is that the burden of establishing his case by the greater weight of the evidence abides with the plaintiff throughout the trial (and so with the defendant as to cross-actions and affirmative defenses); and that the burden shifted to the defendant or adversary party in such instances is merely the burden of *evidence,* meaning the burden of bringing forward evidence. The respondent, of course, maintains the contrary.

Many similar instructions have been approved by this court; but we are, nevertheless, convinced the appellants' contention is correct. The leading case sustaining the respondent's theory probably is Price v. Met. St. Ry. Co., 220 Mo. 435, 119 S. W. 932, 132 Am. St. 588, where this court en banc upheld an instruction declaring that on proof of the relationship of passenger and carrier between the plaintiff and defendant, a collision and consequent injury to plaintiff, "the presumption is that it was occasioned by some negligence of the defendant, and the burden of proof is cast upon the defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part." In that case also the defendant had requested an instruction which told the jury the burden of proof rested upon the plaintiff throughout the entire trial, and that their verdict must be for the defendant unless the plaintiff had proven by a preponderance of the credible evidence that the defendant's servants "at the time and place alleged, were guilty of negligence as alleged and specified in these instructions." (We shall refer later to this quoted part of the instruction.) The trial court refused the instruction and this court ruled that action was proper, saying "such an instruction has no place in a case where the doctrine of *res ipsa loquitur* is applicable. It destroys every vestige of the doctrine of presumptive negligence." This language has been frequently quoted in subsequent decisions and the case has been followed as authority many times, as in Loftus v. Met. St. Ry. Co., 220 Mo. 470, 476-8, 119 S. W. 942-3; Briscoe v. Met. St. Ry. Co., 222 Mo. 104, 115, 120 S. W. 1162, 1165; Hurck v. Mo. Pac. Ry. Co., 252 Mo. 39, 51, 158 S. W. 581, 585; Mayne v. K. C. Rys. Co., 287 Mo. 235, 248, 229 S. W. 386, 389; Anderson v. K. C. Ry. Co., 290 Mo. 1, 6, 233 S. W. 203, 204; Kuhlman v. Water, Light & Transit Co., 307 Mo. 607, 637-8, 271 S. W. 788, 798; Porter v. St. J. Ry. L. H. & P. Co.,

311 Mo. 66, 72, 277 S. W. 913, 914; Roberts v. Schaper Stores Co., 318 Mo. 1190, 1198, 3 S. W. (2d) 241, 244; Fowlkes v. Fleming, 322 Mo. 718, 734, 17 S. W. (2d) 511, 517; Kapros v. Pierce Oil Corp., 324 Mo. 992, 999, 25 S. W. (2d) 777, 779.

Nearly, though not all, these cases cite the Price case, but all apply its doctrine with reference to the shifting of the burden of proof in *res ipsa loquitur* cases. Some use the terms *"onus"* or *"onus probandi,"* some the words "burden" or "burden of proof," and many of them hold the duty is cast on the defendant to rebut the presumption or inference of negligence by a "preponderance of the evidence" or like expression—which certainly imports the burden shifted is the burden of proof in the true sense of that term. But in no one of them is the question raised as to the difference between the "burden of proof" and the "burden of evidence," and as to which of the two passes to a defendant in a *res ipsa loquitur* case.

There are, however, a few cases in which that question was noticed. In Furnish v. Mo. Pac. Ry. Co., 102 Mo. 438, 452-3, 13 S. W. 1044, 22 Am. St. 781, the court gave an instruction declaring if the jury believed the plaintiff was a passenger on the defendant's train, that the train was derailed and the plaintiff injured, "it rests on the defendant to prove to your satisfaction that" the accident was occasioned by some cause other than the defendant's negligence. Another similar instruction said that on proof of the preliminary facts aforesaid, "the burden rests upon the defendant to prove" that the derailment was not caused by the defendant's negligence. Referring to these instructions the opinion was as follows:

"It may not be entirely in accord with technical nicety to instruct that the burden of proof shifts to the defendant in the course of such a trial. It might be more accurate to say . · . . that the facts of the derailment of the car and of plaintiff's injury thereby make out a prima-facie case of defendant's negligence, which, unexplained, would justify a recovery; but, in the ordinary course of administering law, it has become usual to declare that, on a certain showing by plaintiff in such cases, the burden of proof then rests on defendants to prove that it has not been negligent. We are not prepared to condemn that form of expression at this day, in view of our statute to the effect that, in all proceedings we should regard substance rather than form (R. S. 1879, sec. 3586), and should not reverse for any error not affecting the substantial rights of the adverse party. [R. S. 1879, sec. 3569.]"

In other words the instruction in this Furnish case was held erroneous, but not prejudicially so. In Schaefer v. St. L. & Sub. Ry. Co., 128 Mo. 64, 70-72, the plaintiff asked and the court *refused* an instruction telling the jury if they believed the plaintiff was a pas-

senger on the defendant's car, that the car was suddenly started, and the plaintiff thereby injured, "then the burden is thrown upon the defendant to show to the satisfaction of the jury that" the defendant exercised due care. The opinion says:

"The trial court committed no error in refusing Instruction No. 2 asked by plaintiff. The language of that instruction has been frequently condemned by this court (citing the Furnish case last above.) While in the *Furnish case* the court refused to set aside a verdict on an instruction where the same language was used as in this, 'that the burden is thrown upon the defendant to show to the satisfaction of the jury, etc.,' still it criticises the use of the expression as being improper.

"Strictly speaking, the burden of proof of care is never, at any stage of the proceedings, thrown upon the defendant. The burden at all times rests on plaintiff to prove the allegations of his petition, but on certain facts being shown by plaintiff he is entitled, by reason of the legal conclusions deducible by law from the establishing of those facts, to a judgment, if left unexplained by defendant. . . . The most that this court has ever said by way of approval of instructions worded as this one asked by plaintiff and refused by the court is, that it would not disturb verdicts found upon such instructions, but it has never gone to the extent of saying that, if an instruction similarly worded is denied, it will, for that reason, set aside a verdict found against the party asking it."

The Furnish and Schaefer cases, aforesaid, have never been overruled so far as we can find. And yet only two volumes later in Och v. M. K. & T. Ry. Co., 130 Mo. 27, 31 S. W. 962, the court held in an opinion by BURGESS, J., that on proof of the relation of carrier and passenger, accident and injury, "it devolved upon the defendant to show by a preponderance of the evidence that the injury was caused" without fault on its part. As authority, a Pennsylvania case, Clark v. C. & A. Ry. Co., 127 Mo. 197, 29 S. W. 1013, and Dougherty v. Mo. Pac. Rd. Co., 81 Mo. 325, were referred to, following which the court says: "It would seem, from the authorities cited, that the criticism of instructions, in placing the burden of proof upon defendant, is not justified by the authorities."

A few other cases of similar import came along between that time and the handing down of the Price decision, which was written by GRAVES, J., in 1909. But thereafter, in 1917, a case was before the Court en Banc, Simpson v. C., R. I. & P. Ry. Co., 192 S. W. 739, where the question was squarely raised as to whether it is the burden of proof or the burden of evidence that shifts to the defendant in a *res ipsa loquitur* case. There were four opinions, none of which received a carrying vote. But it is particularly noteworthy that in his dissenting opinion in this Simpson case, Judge GRAVES expressly

disclaims he meant to say in the Price case that the plaintiff is relieved of any part of the burden of *proof* in a *res ipsa loquitur* case. His view, in a nutshell, is that the presumption or inference arising under that doctrine simply enables a plaintiff to make a *prima-facie case* without further proof of negligence, and that it then devolves on the defendant to bring on evidence explaining the accident, if he desires. But the burden of proof stays with the plaintiff all the time just as it does in any other law suit where the plaintiff has made a prima-facie case—by the aid of a presumption or otherwise.

In this connection Judge GRAVES gives as his reason for having held the instruction requested by the defendant in the Price case destroyed "every vestige of the doctrine of *res ipsa loquitur*," the fact that it contained the language hereinbefore quoted requiring the plaintiff to show by a preponderance of the evidence that the defendant's servants "were guilty of negligence as alleged and specified in these instructions." This wrongfully imposed on the plaintiff the burden of proving *specific* negligence, says Judge GRAVES, because evidence had been introduced tending to show a number of acts of specific negligence on the part of the defendant and these had been referred to in some of the other instructions.

Later, in 1926, came the case of Bond v. St. L. S. F. Ry. Co., 315 Mo. 987, 1002, 288 S. W. 777, 783, decided by Division One. The opinion refers to the general rule that "the burden of proof as distinguished from the burden of evidence does not shift;" but holds there is an exception when the *res ipsa loquitur* doctrine applies (at least in carrier and passenger cases) following the Price case. The plain implication of the Bond case, however, is that the reasoning in the Price case is illogical.

The great weight of authority in other jurisdictions is to the effect that the burden cast on the defendant in a *res ipsa loquitur* case is the burden of *evidence,* not the burden of proof; and that the latter burden remains with the plaintiff throughout the trial as in any ordinary case. [24 R. C. L. 194, sec. 161; 45 C. J. 1219, sec. 783; 16 L. R. A. (N. S.) 527, note; L. R. A. 1916 A, 930, note; 59 A. L. R. 486, note.]

But while this is so, the cases are not in complete accord, as to whether an instruction imposing the "burden of *proof*" on the defendant to meet the presumption of negligence, is *prejudicially* erroneous. It will be remembered the Furnish case referred to a few paragraphs back, held it was not. But however that may be when the instruction in terms merely shifts to the defendant the "burden" or "burden of proof" without saying more, the consensus of opinion is that when the instruction further requires the defendant to rebut the presumption or inference of negligence *by a preponderance of*

*the evidence,* it is reversible error. [Hurck v. Mo. Pac. Ry. Co., 252 Mo. 39, 46, 52, 158 S. W. 581, 583, 585; 42 A. L. R. 865, note.]

That there is an important difference between the "burden of proof" and the "burden of evidence" seems clear. The plaintiff, having taken the affirmative on the issue of ultimate liability in a lawsuit, must assume the burden of *convincing the jury.* As to affirmative defenses and cross-actions a similar burden is imposed on the defendant. If, therefore, the evidence is equally balanced and the jury is left in doubt, the litigant having the burden of proof loses; he must sustain his case by the greater weight of the evidence. As Wigmore puts it, the party having the burden of proof carries the "risk of non-persuasion." [5 Wigmore on Evidence (2 Ed.) sec. 2485, p. 437. See also Thayer, Preliminary Treatise on Evidence, pp. 353, 378.] In short, the expression signifies the duty of making that evidentiary showing which the law exacts of the party having the affirmative, to win the jury's verdict.

On the other hand, the "burden of evidence" is the burden of "getting by" the judge *to* the jury, by making a prima-facie showing as to each factual ingredient necessary to establish a prima-facie case. Having done this, a plaintiff has discharged his burden of evidence, and the burden shifts to the defendant to produce (if he desires) competent controverting evidence which, if believed, will offset the plaintiff's prima-facie case. If this is done the defendant has met the burden of evidence cast upon him, and made a prima-facie defense, whereupon the burden swings back to the plaintiff to bring forward evidence in rebuttal, and so on. But during all this time the burden of proof, the risk of non-persuasion, remains with the plaintiff, except as to affirmative defenses, etc. The burden of evidence is simply the burden of making or meeting a prima-facie case. [See 5 Wigmore on Evidence (2 Ed.) sec. 2487, p. 442; Thayer, Preliminary Treatise on Evidence, p. 376 et seq.; Downs v. Horton, 287 Mo. 414, 431, 230 S. W. 103, 108.]

In a *res ipsa loquitur* case (as in any other) the plaintiff starts out bearing both the burden of proof and the burden of evidence. By showing, for instance, that he was a passenger, the defendant a carrier, a train wreck and consequent injury to him, he makes a prima-facie case since these facts raise an inference, or as some authorities say, a presumption or "prima-facie presumption," that the accident was occasioned by the defendant's negligence *in some way.*

In other words, in an ordinary negligence case the plaintiff would be required to make a prima-facie showing of the particular negligent acts of the defendant complained of. The defendant would have a right to compel this both in pleading and proof. But in a *res ipsa loquitur* case, owing to the fact that such accidents ordinarily do not occur without negligence on the part of the defendant,

and because the proof is more accessible to the defendant, the plaintiff need only show generally he was injured as a result of *some* negligence of the defendant, without pleading and proving what particular negligence. This of course broadens the issue the defendant has to meet, but it does not shift the burden of proof. The plaintiff still carries the risk of non-persuasion and must show by the greater weight of the evidence that he was injured as a result of the defendant's negligence. Insofar as the cases herein cited are to the contrary, they should be overruled.

An instruction which places the burden of proof on the wrong party is prejudicially erroneous, because it puts the risk of non-persuasion, or the duty of convincing the jury by the greater weight of the evidence, on the opposite party, who, according to law, has the right to prevail even if the evidence is merely in equipoise so that the jury is left in doubt. And so, while this case was a proper one for the application of the doctrine of *res ipsa loquitur*, yet the judgment must be reversed and the cause remanded because of the error in the respondent's main instruction. *Atwood, C. J., Henwood* and *Ragland, JJ.,* concur; *Frank, J.,* dissents; *Gantt, J.,* dissents in separate opinion, in which *White, J.,* concurs.

RAGLAND, J. (concurring).—I concur in all that is said in the principal opinion. The ruling in Price v. Railroad, 220 Mo. 435, which was reluctantly followed in Bond v. Railroad, 315 Mo. 987, cannot be sustained on principle. The opinion, however, does not go far enough in its condemnation of the instruction with which it deals. In directing what inference of fact must be drawn from the facts hypothesized, it flagrantly invades the province of the jury. From the facts, namely, ''While therein plaintiff was passing along an aisle or passageway in the balcony of said theater and . . . there was a heavy radiator in said theater adjacent to said aisle or passageway, and . . . said radiator was in possession and control of defendants, and . . . said radiator fell over and upon plaintiff and injured him as he was passing thereby,'' *the law* does not draw a conclusion of negligence. Reasonable minds might well differ as to whether negligence on the part of defendants should, or could, be inferred from such facts. All that can be said with respect to them, as a matter of law, is that negligence may properly be inferred from them, and therefore that plaintiff having produced evidence tending to establish them made a prima-facie case, that is, a case for the jury. When such a case was made the burden of going forward with the evidence devolved upon the defendants. But whether defendants did, or did not, offer evidence on their part, it was solely the prerogative of the jury to determine what inference, if any, they would draw from plaintiff's proof, without intrusion

on the part of the court. [Ham v. Barret, 28 Mo. 388; Morton v. Heidorn, 135 Mo. 608, 37 S. W. 504; State ex rel. v. Ellison, 268 Mo. 238, 187 S. W. 23; McKenna v. Lynch, 289 Mo. 16, 233 S. W. 175; Sowders v. Railroads, 127 Mo. App. 119, 104 S. W. 1122; Bevan v. Hill, 262 S. W. 416.]

Generally speaking, the only distinction between *ipsa loquitur* cases and others is that in the former it is allowable, in order for plaintiff to make a case for the jury, to plead and prove general negligence instead of the specific negligence which caused his injury. In that distinction no warrant can be found for the court's telling the jury what evidentiary value must be attached to certain facts in proof or what inference must be drawn from them. The so-called "presumption" in such cases is ordinarily nothing more than a permissible inference of fact.

"*Res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence or negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." [U. S. Sup. Ct. in Sweeney v. Erving, 228 U. S. 233.] *Henwood, J.*, concurs in these views.

GANTT, J. (dissenting).—The principal opinions are unwilling to admit that there is an exception to the rule that "the burden of proof abides with the plaintiff throughout the entire trial." They resort to fiction. In the trial of an ordinary law suit there is no place for the application of this rule, unless the evidence "is equally balanced." In effect it is so stated in the principal opinion. I neither know nor have I heard of a law suit in which the evidence was equally balanced. There may have been such law suits, but I do not believe it could happen. Always some fact or circumstance in evidence determines the question. In other words, the rule is a theory without substance, "a mere form," and no place can be found for its application in an ordinary law suit. However, it is an unfair and dangerous weapon in the hands of a defendant in a *res ipsa loquitur* case. In such a case the proof of carrier, passenger, wreck and injury is held to be substantial evidence of negligence on the part of the carrier. If the carrier offers no evidence, I think the jury should be instructed that if it finds the relationship of carrier and passenger, a wreck and injury, the verdict should be for the passenger. From the evidence, the jurors only know that a wreck occurred and a passenger was injured. On these facts reasonable minds could not ground a difference of opinion on the question of

negligence. The jury could only presume negligence as did the judge. Therefore, in the absence of evidence on the part of the carrier, the jury should be instructed that if it found the relationship, wreck and injury, the verdict should be for the passenger. If negligence should be presumed in the absence of evidence on the part of the carrier, it also may be presumed or inferred if the carrier introduced evidence, and the jury should be so instructed. It should further be instructed that the burden is upon the carrier to show by a preponderance of the evidence that it was not negligent.

The principal opinions do not contend that it would be unfair to so instruct the jury. Indeed, they could not well do so. We hold carriers liable in damages for fires along the right of way on a mere showing that the fire originated from the engine. We hold them insurers in transporting inanimate freight. We also hold them insurers in transporting livestock, excepting therefrom injuries occasioned by the Act of God, public enemy or natural propensity of the animal. The theories advanced for so holding are of no consequence. The fact remains that to properly administer justice it is necessary to so rule. If under such facts it is necessary to so rule, it is not unfair in the administration of justice to require a carrier to prove by a preponderance of the evidence that its negligence did not cause the wreck and injury.

The passenger has proven no negligence, and to instruct the jury that the burden is upon the passenger to prove by a preponderance of the evidence that negligence of the carrier caused the wreck, is almost directing a verdict for the carrier. The instruction for the passenger that the jury may infer negligence from the wreck is not understood by the jurors as authorizing a verdict for the passenger, when said instruction is considered with the instruction for the carrier that the burden of proof to establish negligence on the part of the carrier abides with the plaintiff throughout the entire trial. Those instructions confuse the jury, often cause a mistrial and sometimes cause a failure of justice.

Rules are established to aid in the administration of justice. If under certain conditions a rule interferes with the administration of justice, we should not hesitate to establish an exception  There is nothing sacred about the burden-of-proof rule. We should put aside fiction and thereby place the burden of proof in *res ipsa loquitur* cases where it belongs. If we frankly admit that there is an exception to this rule, we thereby eliminate the necessity of resorting to hairsplitting differences between certain words and phrases, and we permit the submission of the issue to the jury by instructions that are in no way misleading.

Entertaining these views, I do not agree to paragraph three of the principal opinion, and I do not agree to the concurring opinion. Therefore, I respectfully dissent. *White, J.,* concurs.