**Stephen H. DRYSDALE, and Helen L. Drysdale, Plaintiffs/Respondents,**

v.

**ESTATE OF Mabel J. DRYSDALE, Deceased, Marcella D. Harris, Executrix, Defendants/Appellants.**

**No. WD 35778.**

Missouri Court of Appeals,
Western District.

Feb. 5, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 2, 1985.

---

**1.** The statute has since been amended. *Laws of* *Mo.*1983 p. 916.

Kenneth O. McCutcheon, Jr., Versailles, for defendants/appellants.

Marvin W. Opie, Versailles, Richard M. Stout, Chesterfield, for plaintiffs/respondents.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

The defendant executrix of the estate of Mabel Drysdale appeals from a judgment directing specific performance by the executrix of decedent's contract for the sale of a farm to plaintiffs Stephen and Helen Drysdale. We affirm the judgment.

The defendant complains that the trial court erred in finding that the plaintiffs had performed their part of the contract because, she asserts, plaintiffs' own uncontroverted evidence at best established that they had refused to pay nearly one-fourth of the contract price.

On November 12, 1970, Leonard and Mabel Drysdale agreed to sell a 328.5 acre farm to their son, Stephen, and his wife, Helen, for $32,850. The written contract provides for payment in eight annual installments as follows: $4,850 on December 28, 1970, $5,000 on December 28, 1971, and $4,000 each succeeding December 28 through 1976, plus a final $3,000 installment due on December 28, 1977. The

terms of the contract also require the plaintiffs to pay interest at 6% per year on the unpaid balance, and it permits plaintiffs to make additional principal payments in $1,000 increments up to a total of $4,000 with payment of any annual installment. Plaintiffs are to have possession and to pay all taxes and farm expenses incurred after January 1, 1970, but all agricultural program (ASC) payments due the sellers as title holders of the farm after that date were to be assigned upon receipt by the sellers to the purchasers.

The contract was received in evidence over defendant's objection, but on appeal defendant does not complain of that ruling. Defendant filed an inventory of the estate which acknowledged the existence and terms of the contract and "payments of principal and interest ... through December 28, 1974...."

Leonard Drysdale died in January, 1975; Mabel Drysdale died on August 30, 1975. Defendant Marcella Drysdale Harris, the deceased's daughter, was appointed executrix of the estate on September 12, 1975.

At trial plaintiff Stephen Drysdale testified to the payment on December 19, 1975, of $1,686.54 by cashier's check to the Drysdale estate and to the payment of the 1975 real estate taxes. He also testified that he prepared and gave to the attorney for the estate plaintiffs' Exhibit 7, including a statement rendered to the estate to support the December payment. The statement was intended to show that plaintiffs were remitting to the estate a principal payment of $4,000 plus $540 interest on the $9,000 balance due on the contract at 6% for one year. It also showed plaintiffs taking $2,853.46 credit due them for ASC payments collected by sellers on November 6, 1975, including $24.18 in interest thereon. According to plaintiffs' statement of the account, the net due the estate was $1,686.54.

The defendant objected to the exhibit and to plaintiff's testimony that he had delivered a copy of it to the estate's attorney. The stated grounds for the objections were that the exhibit and the testimony were "self-serving, irrelevant, and hearsay." The court sustained the objection.

Mr. Drysdale testified that in December, 1976, he made an additional payment of $2,432.58, and to show "how much the payment would be", prepared and gave another statement of the account to the estate, plaintiffs' Exhibit 17. The statement shows the principal balance due as $5,000, interest of $300 (6% on $5,000), and an offsetting item of $2,867.42 due buyers for agricultural program payments received by the estate on October 7, 1976, including $38.14 interest, leaving a net due the estate of $2,432.58. Attached to the statement is a recapitulation of the account from its beginning in 1970 showing payment of $32,850 on the principal amount due, plus interest in the total amount of $7,654.80, plus $790.19 in miscellaneous credits due sellers, less $20,060.03, plus $286.29 interest thereon, and $157.87 in miscellaneous credits due buyer. The net result shown is full payment under the contract. Mr. Drysdale also testified that he paid the 1976 taxes. Upon defendant's objection that Exhibit 17 was self-serving, irrelevant, hearsay, not the best evidence, and violated the Dead Man's Statute,[1] the court excluded the exhibit.

Plaintiffs called William G. Johnson, who had previously served as attorney for the executrix. He identified plaintiffs' Exhibit 9 as a receipt he signed for a $2,432.58 cashier's check. He stated that he delivered the check to the defendant. The receipt, admitted over defendant's objection, reads as follows:

I hereby acknowledge receipt of Mercantile Bank's Cashier check # 306639 in the amount of $2,432.58 said check representing the final payment due on the Leonard I. and Mabel J. Drysdale and Stephen H. and Helen L. Drysdale contract for sale dated November 12, 1970.

/s/ William G. Johnson
Attorney for the Estate of
Mabel J. Drysdale, Dec.

---

1. § 491.010, Revised Statutes of Missouri, 1978, as amended by L.1983, p. 894, S.B. 44 & 45, § 1.

At the bottom of the receipt is a photo copy of the cashier's check showing the plaintiffs as the remitters and the Estate of Mabel J. Drysdale as the payee.

■ Defendant objected to Mr. Johnson's testimony and to Exhibit 9 on the grounds that plaintiffs had not shown that the attorney had authority to execute or give such a receipt and that any information he would have obtained from the executrix or the deceased Drysdales before their deaths would be subject to the attorney-client privilege. For good measure, counsel added a Dead Man's Statute objection, that is, that the testimony about the exhibit was an attempt to elicit testimony that the Drysdales would have been incompetent to give themselves.[2] Finally, defendant objected that plaintiff had not shown that Mr. Johnson was the attorney for the estate or for the executrix at the time.

The defendant did not cross-examine Mr. Johnson and rested her case without offering evidence. The record contains no hint of any attempt by the executrix to regain possession of the farm from the plaintiffs despite defendant's assertion that the plaintiffs have been in default under the contract since 1975 and as of 1977 owed $12,260 in principal and interest on the contract. The defendant executrix filed no counterclaim for either damages or possession based upon plaintiffs' alleged default.

At the conclusion of the evidence, the trial court announced that it would give no weight to the part of plaintiffs' Exhibit 9 reciting that the $2,432.58 was the final payment because it had sustained defendant's objection to that part of the receipt. The record reflects no such ruling. In fact, the transcript shows that defendant's two trial attorneys jointly made their last objections to the admission of Exhibit 9 as follows:

MR. OPIE: ....

There's no showing of authority here, no foundation in an attempt to show that authority and we would also—the best evidence of the check would be the check itself.[3] And so, therefore, we would—and again we believe this is attempting to elicit evidence of the Drysdales themselves that they are incompetent to testify to under the dead man's statute.

THE COURT: Mr. Stout, did you have something you wanted to add?

MR. STOUT: No, I didn't, Your Honor, except that there is some language in the document that purports to go beyond the act which Mr. Johnson said that he performed or was authorized to perform; and that is the actual acceptance of the check itself. And we'd direct the court's attention in particular to that language.

Thereupon, the court overruled defendant's objection *without reservation* and admitted the exhibit *in toto*.

Despite its decision to disregard the receipt's recital that the $2,432.58 cashier's check represented the final payment on the contract, the court found that, whether or not Mr. Johnson had the authority to accept the $2,432.58 in 1976, that payment at least reflected a tender by the Drysdales sufficient to require the court to order specific performance. The court further found that plaintiffs had made all the payments required and had otherwise fully performed under the contract.

■ In any specific performance case, the plaintiff must prove by clear and convincing evidence that he has performed (or tendered performance of) his portion of the contract. *Higgins v. Rachford*, 307 S.W.2d 411, 418 (Mo.1957). Under Rule 73.01 and

---

2. The fact that the plaintiffs may have been barred by the Dead Man's Statute from testifying to the balance due the estate under the contract would not be a bar to persons *not a party to the transaction* with the deceased parents testifying as to their knowledge of the transaction or to payments made under the contract to the deceased sellers or to the estate. § 491.010, *supra*.

3. Plaintiff's Exhibit 17 included the original and a copy of plaintiffs' check to the bank for the $2,432.58 cashier's check and the bank cashier's check payable to the "Estate of Mabel J. Drysdale" in that amount. The plaintiff's check (and its photo copy) bore the notation "Final Installment Farm Purch. Contract."

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. 1976) (en banc), upon review of the decree of a trial court in suits of an equitable nature we will sustain the decree unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron* further constrains us to "exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* Moreover, "[w]hen the trial court reaches the correct result for reasons other than those adopted or perceived by the appellate court, the judgment will be affirmed." *Guild Management Co. v. Oxenhandler*, 541 S.W.2d 687, 691 (Mo.App.1976).

Plaintiffs had the burden to show by clear and convincing evidence that they had fully performed or tendered full performance. *Domyan v. Dorin*, 356 S.W.2d 70, 72 (Mo.1962); *Lancaster v. Simmons*, 621 S.W.2d 935, 942 (Mo.App.1981); *Higgins, supra.* Therefore, the decree of specific performance in this case cannot be sustained on appeal unless the evidence which was admitted or which should have been admitted shows plaintiffs' performance or tender of full performance.

Looking only at the evidence which the court admitted and considered, plaintiffs failed to prove their performance. The defendants' admissions and the evidence which the court received showed only payment of the amounts due under the contract from 1970 through 1974 and the payment of $1,686.54 in 1975 and $2,432.58 in 1976. No specific evidence of the payments of the full amounts of $4,000 plus interest due in each of years 1975 and 1976 was admitted, nor does the admitted evidence explicitly show that plaintiffs paid the final $3,000 plus interest due in 1977. The only evidence admitted bearing on those payments was plaintiffs' Exhibit 9, the receipt showing payment in full, but the trial court declined to consider the language of the receipt that the $2,432.58 cashier's check represented the final payment on the contract.

The first question we must decide is whether the trial court should have considered the full text of the receipt that Mr. Johnson, attorney for the estate, gave to plaintiffs upon receipt of the 1976 payment. The answer to that question depends upon whether the attorney had authority to receive the payment and give a receipt stating that the payment represented the final payment due.

■ Defendant contends that plaintiffs failed to establish Mr. Johnson's "express authority" to give such a receipt, citing *Kansas City v. Martin*, 391 S.W.2d 608, 615 (Mo.App.1965), *Couch v. Landers*, 316 S.W.2d 588, 593 (Mo.1958), and *Sudekum v. Fasnacht's Estate*, 236 Mo.App. 455, 157 S.W.2d 264, 266 (1942). All are distinguishable on their facts, although they stand for the general proposition that an attorney must have express authority to bind a client to a surrender of a substantial right. No doubt that is so. Moreover, the mere fact of the attorney's employment does not give the attorney authority to settle a client's case. *Leffler v. Bi-State Development Agency*, 612 S.W.2d 835, 836–37 (Mo. App.1981). But the authority of an attorney of record to perform an act for a client is presumed, prima facie at least, and the burden of showing the attorney's want of authority rests on the party who questions it unless such authority is denied by the client. *Kahn v. Brunswick-Balke-Collender Co.*, 156 S.W.2d 40, 43 (Mo.App.1941).

■ In the present case, by merely objecting to the evidence, defendant did not take up her burden to show Mr. Johnson's want of authority. Objections are not enough. If the attorney for the executrix did not have the authority to give a receipt to the estate's debtors upon receiving payments due the estate, that would be most unusual and requires some specific showing, preferably from the person who could grant or withhold that authority. If in fact Mr. Johnson truly had such limited authority that he could not give a receipt marked "final payment," then the executrix had the

duty to take the witness stand at the hearing and say so. *Samland v. J. White Transportation Co., Inc.*, 675 S.W.2d 92, 96 (Mo.App.1984). Absent such evidence, the trial court was entitled to admit the receipt into evidence full blown and to draw from it all the inferences its contents justified, including the inference that the attorney for the estate, aware of the exact status of the estate's claim against the plaintiffs under the contract, would know the balance due under that agreement.

 Had the trial court considered the full implications of the receipt as it should have, that evidence was sufficient to carry the day for plaintiffs because the receipt reciting that the cashier's check represented final payment on plaintiffs' contract established a prima facie case for specific performance. Of course, plaintiffs had the burden of proof to show their full performance. Here plaintiffs' counsel chose the decidedly chancy route of proving performance by relying only upon the 1976 receipt. But that receipt was enough to establish a prima facie case, shifting the burden to defendant to rebut plaintiffs' evidence. The Supreme Court in *McCloskey v. Koplar*, 329 Mo. 527, 46 S.W.2d 557 (1932) (en banc), (at 563, 46 S.W.2d 557) described the process as follows:

> [T]he "burden of evidence" is the burden of "getting by" the judge to the jury, by making a prima facie showing as to each factual ingredient necessary to establish a prima facie case. Having done this, a plaintiff has discharged his burden of evidence, and the burden shifts to the defendant to produce, if he desires, competent controverting evidence which, if believed, will offset the plaintiff's prima facie case. If this is done the defendant has met the burden of evidence cast upon him, and made a prima facie defense, whereupon the burden swings back to the plaintiff to bring forward evidence in rebuttal, and so on. But during all this time the burden of proof, the risk of nonpersuasion, remains with the plaintiff, except as to affirmative defenses, etc. The burden of evidence is simply

the burden of making or meeting a prima facie case. See 5 Wigmore on Evidence (2d Ed.) § 2487, p. 442; Thayer, Preliminary Treatise on Evidence, p. 376 et seq.; *Downs v. Horton*, 287 Mo. 414, 431, 230 S.W. 103, 108.

Plaintiffs having made a prima facie case with Exhibit 9 and the defendant having failed to rebut either her attorney's authority to give the receipt or, more importantly, the inference that he knew the status of the estate's claim under the contract and that plaintiffs' $2,432.58 cashier's check represented full and final payment, the trial court should have entered its decree for plaintiffs, as it did.

Accordingly, we affirm the decree of specific performance entered by the trial court.

All concur.