CATHERYN A. GLOSSIP, BY, ETC., RESPONDENT, v. DELBERT F. KELLY, APPELLANT.—67 S. W. (2d) 513.

Kansas City Court of Appeals. January 8, 1934.

*W. J. Boyd* for respondent.

*Landis & Landis* for appellant.

REYNOLDS, C.—This suit was instituted in the Circuit Court of Buchanan County, Missouri, on the fourteenth day of March, 1932, for the recovery of damages in the sum of ten thousand dollars from defendant and others on account of burns sustained by respondent about the tenth day of September, 1931. On or about that date, plaintiff, then a country girl nineteen years of age, living at the little town of Osborn, went into defendant's place of business, known as Caster's Beauty Academy in St. Joseph, Missouri, to get a permanent wave of her hair which defendant undertook to give her and, in the course of giving which, she was seriously injured by defendant or his agents. The petition alleged that defendants were engaged in conducting for hire a beauty academy and parlor in the

city of St. Joseph, Missouri, and held themselves out as capable, efficient, competent, skillful, and expert in permanently waving and curling women's hair; that on or about September 17, 1931, plaintiff, relying upon the said representations of defendants, applied to defendants for a permanent wave of her hair and, for a valuable consideration paid them, they undertook to administer such permanent wave and that, during such undertaking, they and their servants, agents, and employees so carelessly, negligently, and unskillfully conducted themselves and so carelessly, negligently, and unskillfully manipulated, operated, and handled the instruments, appliances, and apparatuses used in and about such undertaking as seriously, painfully, and permanently to injure plaintiff in this, to-wit:—. The petition proceeds with an enumeration of the injuries received—included in which were burns upon the head and scalp, the hair, and also about the right mastoid bone—together with a statement of the amount of damages and a prayer for judgment.

The defendant, Delbert F. Kelly, filed his amended separate answer in which he tendered a general denial and also a specific denial of any negligence in the operation of the instrumentalities used in giving plaintiff the permanent wave. The answer also set up contributory negligence on plaintiff's part in failing to call the attention of the operator to and telling her of the painful sensations being experienced in her head and scalp during the progress of the work upon her head. The answer also pleaded a release.

To this amended answer, plaintiff filed a verified reply, denying the allegations thereof and especially denying the execution of any release and tendering the issue that, if plaintiff signed any paper purporting to be a release, it was obtained by fraud upon the part of defendant. The evidence tended to show that plaintiff went to defendant's place because she had seen it advertised in the newspapers and telephone directories and had heard people talk about the place as a good place to get a permanent wave. She had never been in the place before, nor had she ever been in any other beauty shop. She went into defendant's place of business between one and one-thirty o'clock in the afternoon and left there around five o'clock. When she went in, she told Mrs. Kelly, an employee of defendant and a supervisor in his place of business, that she wanted a permanent wave and was asked by Mrs. Kelly whether she wanted a student or a professional wave. Finally, it was arranged between them that she was to have a wave administered by a student at the price of either four dollars or four dollars and fifty cents, which charge she paid; and work was immediately begun upon her.

A Mrs. Neva Davis was assigned to wait upon plaintiff. She first gave the plaintiff a shampoo and then, after drying her hair, began to wind plaintiff's hair on spindles or curlers. Plaintiff had nothing to do with putting her hair on the spindles or curlers or

putting on any of the other equipment or paraphernalia and knew nothing about those things. Mrs. Davis then took plaintiff "back" and put her under some kind of an electrical machine to curl her hair. Plaintiff had nothing to do with operating that machine or turning on or off the current. After plaintiff was put under that machine, Mrs. Davis left. She and Mrs. Kelly later returned and turned on the current in the machine; and they kept debating whether to leave it on or turn it off and did not seem to know how long they should leave it on or when they should turn it off.

In the meantime, plaintiff told Mrs. Davis her head was being burned. She felt that she was being burned, and told her so several times. In response to plaintiff's complaints that she was being burned, Mrs. Davis and Mrs. Kelly stated to her, "It cannot burn you." While plaintiff's hair was being put on the spindles or curlers, plaintiff several times told Mrs. Davis that she felt that it was pulling. She could not state that Mrs. Davis did anything about it, only she felt that it was pulling tighter than ever after she informed them that she felt it was pulling. While her hair was in that condition and without any changes being made, they put her under the electrical machine. Eventually, Mrs. Davis and Mrs. Kelly took off the equipment and let plaintiff out from under the machine. Her head felt hot and sore and felt as if it had been burned. She was not sure that she was burned until early the next morning when she discovered her head had blisters on it in several places. One of the blisters was back of her right ear, over the mastoid gland; one was in the crown of her head; and one was between those two. She went back to the shop that morning and showed the burns to Mrs. Kelly, who washed them off with alcohol.

At the time plaintiff received the burns in question, she was staying at the home of the Coleman sisters at 729 South Sixteenth Street, St. Joseph; and they and a Miss Edna Weaver, who also lived at that address, saw the blisters. The blisters became inflamed and infected. They started running and had a bad odor. There was a discharge from them. Plaintiff had no burn or any other trouble with her scalp when she went into defendant's place of business to get her permanent wave. The blisters healed up after a month's time or more. Although the treatment for the burns continued over a period of a month, defendant never at any time sent plaintiff to a doctor or called one for her. The burns left two scars, one behind plaintiff's right ear over the mastoid process about an inch or an inch and a half across, and a smaller one about half an inch farther up in her hair. The hair roots or follicles were killed in the area of the burns. The burns were extremely painful. Plaintiff was made nervous by the burns and was unable to sleep well and suffered from a ringing sensation in her right ear; and her capacity to hear through the right ear was impaired—all of which conditions could reasonably

have come from the burns suffered by plaintiff and the infection thereof.

At the close of plaintiff's evidence, the court sustained demurrers as to all other defendants than Delbert F. Kelly, the appellant herein; and plaintiff took an involuntary non-suit as to them and proceeded against the appealing defendant only. The jury awarded plaintiff a verdict in the sum of four hundred dollars; judgment was entered upon said verdict for plaintiff for said sum against defendant Delbert F. Kelly; after an unsuccessful motion for a new trial, he prosecutes this appeal.

## Opinion.

The appellant assigns as error upon the trial below the giving of instruction number 2 for the respondent.

The petition alleged that, for a valuable consideration paid defendant by the plaintiff, "the defendant undertook to permanently wave plaintiff's hair that defendant, his servants, agents and employees, so carelessly, negligently and unskillfully conducted themselves in and about said undertaking, and so carelessly, negligently and unskillfully manipulated, operated and handled the instruments, appliances and apparatuses used in and about such undertaking as to seriously, painfully and permanently injure plaintiff in [this to-wit:—" The petition proceeds to set out the injuries and damages. It further alleged that "all the instruments, machinery, appliances, equipment and apparatuses used by the defendants in such undertaking were in the exclusive possession, control, and management of defendant, his servants, agents and employees, and that plaintiff had no knowledge or control over the same."

It is clear that the petition thus charged general negligence. It was not challenged by motion to make more definite and certain in the trial court or in any other manner. It is, therefore, to be considered as sufficient.

1—Instruction number 2, complained of, submitted to the jury the question of defendant's negligence in the same general terms.

It is contended by appellant that, even though no specific negligence was charged in the petition, yet, nevertheless, the instruction was required to be so formulated as to require the jury to find the particular act or acts of negligence, revealed in the proof, occasioning the injury; otherwise, it became a mere roving commission to the jury to determine for itself what did or did not constitute such negligence. The contention seems to be well made unless this case be one where the doctrine of *res ipsa loquitur* applies under the pleadings; and the burden to exculpate from fault lies with the defendant. [Young v. Wolff, 190 Mo. App. 48, l. c. 55, 175 S. W. 248.] That such doctrine does apply and that this case is strictly within such

doctrine is respondent's answer to such contention. Whether such doctrine does apply, we shall shortly see.

2—One of the distinctive features of the doctrine of *res ipsa loquitur* is that it relieves the plaintiff of pleading and proving specific negligence but not of pleading and proving general negligence, that is, the injury and such attendant circumstances as will support an inference of negligence which the jury must find. When this is done, the burden of rebutting the inference and preventing the jury so finding is upon the defendant. [Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693, l. c. 700.]

This doctrine may ordinarily be invoked where the means and instrumentalities employed, through or from which the injuries arose, are peculiarly within the knowledge and under the control of the party charged, in that class of cases where it appears that the accident was of that kind which, according to common experience, does not usually occur, except from some fault of such party or his servants in the control and operation of the same or from some imperfection in the means and instrumentalities employed; for, in such cases, it is considered that he is in a much better position to explain the cause of the injury than the injured or complaining party is. [Klebe v. Parker Distilling Co., 207 Mo. 480; Ferguson v. Fulton Iron Works, 220 Mo. App. 525, 259 S. W. 811.]

Where the instrumentalities are as shown to be under the management of defendant or his servants and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, such accident affords reasonable evidence, in absence of explanation by the defendant, that the same arose from want of care. [Trotter v. St. Louis & S. R. Co., 122 Mo. App. 405, l. c. 413, 99 S. W. 508.]

3—A prima facie case is made, in accordance with the principles of this doctrine, where it is shown that the accident is of a kind which does not ordinarily occur except from some fault of the party charged or of his servants or from some imperfection in the instrumentalities and appliances used and only where, also, the nature and circumstances of the occurrence indicate that the injured party is not in a position to explain the cause but the party charged, by reason of his greater opportunities to know, is thereby in a position to explain it and so show himself free from negligence or, at least, to overcome the inference arising from the nature and circumstances of the occurrence resulting in the injury. [Meade v. Missouri Water & Steam Supply Co., 318 Mo. 350, 300 S. W. 515; Gordon v. Muehling Packing Co., supra.]

4—The evidence in this case shows that the plaintiff knew nothing about the means and processes or the instrumentalities employed in administering a permanent wave of her hair. The instrumentalities and appliances in the processes of administering the same, the manner

in which they were used and applied, or other means and agencies employed were all peculiarly under the control and within the knowledge of the defendant and his servants and were such as to require special skill on the part of the operator.

That accident or injury of the character complained of does not ordinarily occur to the party obtaining the wave from the use of the instrumentalities and appliances used and the manner, methods, and processes employed in their application where proper care is used is abundantly shown by the evidence; and such fact, therefore, is sufficient for an inference where injury does occur that it was occasioned by reason of some imperfection in such instrumentalities or appliances or from some fault upon the part of the defendant or his employees in the use of the same or other agencies, processes, or methods employed and cast upon defendant the burden of exculpating himself from fault.

It, therefore, appears that this case, under the record, is within the doctrine of *res ipsa loquitur* and the principles applicable thereto.

The plaintiff made her prima facie case by showing her injuries and such attendant circumstances as to justify an inference of negligence upon the defendant's part and to place the burden upon the defendant to rebut such inference. The plaintiff was not called upon to show any specific act or acts of negligence but was only required to show a situation from which negligence of some kind upon defendant's part might be reasonably inferred.

5—It cannot be told with any certainty under the evidence in the record what, if any, particular act was the cause of plaintiff's injuries, whether from the wrapping of her hair too tight or from the placing of flannel pads saturated with some solution or from the steaming of her hair too great a length of time or from the wrongful application of electric current or from the improper adjustment of spindles and curlers upon which plaintiff's hair was rolled or other matter or matters. These matters all passed under review upon the trial as part of the attendant circumstances of the injuries; but no specific issue was made under the evidence as to any specific act or acts as being the specific negligence by which the injuries were occasioned; and it was not, therefore, necessary that plaintiff's instruction number 2 should have hypothecated any specific act or acts to the jury; and the trial court did not err in giving instruction number 2 in the form disclosed by the record.

6—Appellant also complains of the refusal of the trial court to give his instruction J as asked, which formulated the proposition that, if plaintiff originally permitted the infection of her injuries, plaintiff could not recover for any injuries occasioned by such infection. As a sufficient answer to this complaint, it may be said that no such issue was presented by the pleadings. [De Donato v. Morrison, 160 Mo. l. c. 591; Evans v. Klusmeyer, 301 Mo. 352, l. c. 362; First National Bank of Elyria v. Equipment Co., 221 Mo. App. 733.]

It may be further said, however, that such instruction was objectionable upon the further ground that it was too general and gave to the jury a roving commission to declare as negligence upon plaintiff's part in such respect, if any, any act appearing to it sufficient therefor. No particular act or acts sufficient in the court's opinion to constitute negligence upon her part in such respect were hypothecated to the jury, the existence of which was required by it to be found. The authorities cited by appellant against the action of the court in giving plaintiff's instruction number 2, although for reasons stated held not be to controlling against such action in this case, are controlling as applied to the action of the court in refusing defendant's instruction J.

7—The appellant finally contends that respondent's counsel upon the trial was erroneously permitted over his objection to argue to the jury with respect to the absence of one Dr. Gale as a witness and that defendant could have introduced the doctor as well as plaintiff. The particular matters complained of are as follows:

"Mr. Boyd: John Landis said they could not get Dr. ———, their family doctor. You know that is a lot of bologna.

"Mr. Landis: We object and ask the attorney be reprimanded. It is a matter of law we have no right to call him to testify. Confidential communications would prevent our putting him on the stand.

"The Court: That depends. You know what the law is.

"Mr. Landis: I think he should be reprimanded. Wait until the court has ruled on it.

"The Court: Gentlemen, if you want the jury instructed I will state the plaintiff could have claimed a confidential communication as to Dr. Gale until Dr. Renaud was put on the witness stand. After Dr. Renaud was put on then any one could have called Dr. Gale.

"To which ruling of the court, the defendant then and there duly excepted and still excepts.

"Mr. Boyd: Now, what do you say? Could not you have brought Dr. Gale? You could have brought him and put him on the stand as soon as we introduced any evidence from a medical standpoint of the girl's condition. Dr. Gale is just a common doctor. He is not a specialist.

"Mr. Landis: We object. There is no evidence of that.

"The Court: There is testimony he is a doctor at Osborn. Whether he is a common doctor the jury can determine.

"To which ruling of the court, defendant Delbert Franklin Kelly, then and there duly excepted and still excepts."

We find no error in such regard. The argument of defendant's counsel seems to have provoked the argument of plaintiff's counsel and his remarks complained of; and the observations and rulings of the court upon objections thereto by defendant's counsel were proper and clearly the law. That defendant's counsel might have been re-

quired to have used unusual efforts to obtain the testimony of Dr. Gale does not in the least militate against the correctness of the court's rulings. Conditions frequently arise in the prosecution of a law suit requiring quick and decisive action and unusual effort upon the part of a party litigant or his attorney...

8—Neither can it be successfully contended that the verdict was excessive. The evidence shows substantial injuries to plaintiff in the way of burns, some of which left scars over which hair never grew. Her head became sore and pained her and was still sore at the time of the trial. Her sleep was affected, and a ringing sensation in her head was produced. Her hearing was also affected. The burns upon her head became inflamed and infected and gave forth a bad odor for some weeks. All in all, we do not think the amount of the verdict was in excess of a fair compensation for the injuries sustained.

Finding no error upon the part of the trial court in any particular assigned, it follows that the judgment should be affirmed; and it is accordingly so ordered. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.