MARY J. VAN HOUTEN, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE CO., APPELLANT.—122 S. W. (2d) 868.

Kansas City Court of Appeals. November 7, 1938.

*Charles L. Carr* and *Cooper, Neel, Kemp, Sutherland & E. E. Ball* for appellant.

428

*Leo T. Schwartz* and *Maurice J. O'Sullivan* for respondent.

*Thomas A. Schwartz,* of counsel.

REYNOLDS, J.—This is an action for $20,000 damages for personal injuries alleged to have been sustained by the plaintiff, a passenger on the defendant's street car, by reason of the carelessness and negligence of the defendant. The action originated and was tried in the Circuit Court of Jackson County at Kansas City, where judgment was rendered December 16, 1936, at the November, 1936, term of court.

The petition alleges that the plaintiff, on February 27, 1935, was a passenger on one of the defendant's Holmes Street street cars going in a south-bound direction and that, when said street car reached Twenty-seventh Street, where Twenty-seventh Street was intersected by Holmes Street, the plaintiff, in the usual manner, attempted to descend and alight from said street car and, while so doing, through the negligence and carelessness of the defendant, was caused to fall from the front platform of said street car to the street pavement, thereby sustaining severe and permanent injuries; that said street car was under the exclusive control and management of the defendant; and that the cause and reason for the plaintiff's injury was peculiarly within the knowledge of the defendant and, except as otherwise herein stated, the plaintiff was wholly without any means of knowing the reason and cause of her injuries. The petition further alleges that, as a direct result of the negligence and carelessness of the defendant as aforesaid, she sustained severe and permanent injuries, which, together with the effects thereof, are permanent in character. The petition sets out in detail the injuries alleged to have been sustained and alleges that, by reason of the same, the plaintiff had been damaged in the sum of $20,000, for which sum she prayed judgment.

The answer is a general denial.

The trial before the court and jury resulted in a verdict and judgment in favor of the plaintiff in the sum of $7,500, from which judgment the defendant, after unsuccessful motions in arrest of judgment and for new trial, appeals to this court.

The verdict was by ten jurors.

The evidence upon the plaintiff's part supports the allegations of her petition and shows substantially the following state of facts; On February 27, 1935, the plaintiff boarded one of the defendant's Holmes Street street cars at Twelfth and Main Streets, in Kansas City, Missouri, as a passenger thereon, and paid the fare asked by the defendant of her as a passenger. Holmes Street intersects Twenty-seventh Street; and the Holmes Street car line passes in a southerly direction along Holmes Street over the intersection with Twenty-seventh Street. When said street car reached Holmes and Twenty-

seventh Streets and stopped on signal, the plaintiff arose from her seat in the car and proceeded in an effort to descend and alight from said car in the usual manner for descent therefrom by way of the front entrance and platform of the car and the steps leading therefrom down to the street. As she stepped down from the platform on to the steps, she caught the center upright bar with her left hand and, holding thereto, placed her weight on her right foot on the front folding step leading from said platform immediately above the street, which, when she stepped on it, gave down with a jolt a distance of about two inches with such force as to cause her to lose her hold on the upright and to lose her balance and to throw her headlong out into the street. She fell on the street pavement, stretched in a southerly or southwesterly direction, landing on her right side with her right foot doubled up under her knee and with one arm and her left foot extending from her body. The heel bone of the right foot was broken from top to bottom; a large fragment thereof was displaced upward from one and one-half to two inches by the pull of the Achilles tendon. The plaintiff's testimony was to the effect that, after she was thrown or had fallen from the step of the car, the operator thereof closed the doors over the platform entrance and the steps and started to move the car up and moved it forward several feet when, discovering that the plaintiff had fallen, he stopped it immediately and came back to her and tried to help her up and pulled her over to the curb at the corner of Holmes and Twenty-seventh Streets, some five or six feet away. She was complaining that she was seriously injured and that her leg had been broken and asked the operator to call her husband.

The evidence fails to disclose that any call was put in by him for her husband but discloses to the contrary that no call was put in. A call, however, was put in by him for an ambulance and for the dispatcher of the defendant company. Just what the duties of the dispatcher were in case of an injury to a passenger is not shown by the record, nor does it appear why it was important to call him.

There is contradictory evidence to that of the plaintiff and her witnesses offered by the defendant to the effect that the plaintiff safely descended from the platform over the steps to the street and for some reason fell after safely reaching the street and after having taken a step or two away from the car entrance; that the operator of the car noticed before he started up his car that she had fallen in the street and immediately reopened the doors covering the entrance and the steps and descended to the street and went to her aid without ever having started up his car; and that the step upon which she stepped, which she claimed caused her fall, was in place and in safe condition for use and was not defective.

There is evidence by witness Brisendine, testifying for the defendant, to the effect that he was a regular employee in the mechani-

cal department of the defendant and that early that morning he had inspected the car upon which the plaintiff was riding and found the condition of the step which the plaintiff claims caused her fall was in perfect order and, when the doors were opened, went completely down to its normal position. He admitted, however, on cross-examination, that the steps on the cars did sometimes rebound when people stepped on them and would go down and fly back; that, when not in perfect working order, they might stick before getting all the way down but would not stick if in perfect working order; and that only when one is out of alignment and adjustment will it drop with a jolt when stepped on. Another witness, Frank E. Taylor, called by the defendant, gave testimony to the same effect as witness Brisendine.

It appears that the plaintiff's injury occurred about one o'clock p. m.

The plaintiff introduced as witnesses in her behalf Mrs. Alva Lillard and her daughter, Mrs. Betty Lee Post, who were crossing over Holmes Street at the intersection with Twenty-seventh Sreet or approaching to cross over it at the time of the plaintiff's injury and who corroborated her testimony as to the manner in which she fell and testified that they saw her falling from the steps of the car out into the street. It appears from the evidence that it was some fifteen or twenty minutes after the accident before an ambulance reached the point of the plaintiff's injury and that it was about one half an hour before she reached her home, which was only a little over a block away. The operator took her name, her age, and her address.

All conflicts in the evidence were resolved by the jury in the plaintiff's favor so that this appeal must be disposed of from the standpoint of the plaintiff's evidence and the admissions of the witnesses Brisendine and Taylor.

Mrs. Lillard, one of the witnesses for the plaintiff, went to the plaintiff's home soon after the plaintiff reached there; and the plaintiff recognized her as one she had seen at the scene of the accident.

Dr. Davis, a witness for the plaintiff at the trial, was called. He testified that he took the plaintiff in charge and, after examination, took her to the Research Hospital, where she remained for some time. Dr. Edward P. Heller was called into consultation and operated on her heel. An X-ray picture was taken of her foot, and it showed a fracture of the posterior bone and showed that the fragment broken loose had been displaced upward. She had some other bruises on the body. Her right side, right hip, and right shoulder were bruised by the fall and her neck and head severely twisted. She suffered intense pain of the most excruciating kind, together with shock. At the time that Dr. Davis reached her, she was suffering pain and suffering, to some extent, from shock. He testified that the fracture of

a bone is accompanied by a great deal of pain and some degree of shock, which would make one nervous, and that the pain was such as to keep one from sleeping. The doctor prescribed for both the plaintiff's nervous condition and her sleeplessness. He gave her both morphine and amytal to correct the nervousness. The doctor testified that his last examination of the plaintiff was November 21, 1936; that, at such time, he did not make any examination of her foot; and that her general condition was very good. Dr. Heller, who was called into consultation by Dr. Davis, testified for the plaintiff on the trial that he specialized in "traumatic surgery, surgery of injuries;" that he was called in by Dr. Davis to treat the plaintiff; that he first saw her on February 27, 1935, at the Research Hospital, at which time he made an examination of her, which disclosed that her right leg and foot had been injured. She had a swollen and tender right foot, heel, and ankle. An X-ray revealed at that time the fracture of her heel bone. The fragment, a rather large one, had been displaced upward by the Achilles tendon or some other tendon in her heel. It had been displaced a distance of one and one-half inches, maybe two inches. The operation upon the fractured bone involved an incision to expose the bone. The operation was performed by Dr. Heller, admitted by the defendant's attorney to have been a very able and competent physician and surgeon and a regular doctor, with an experience in actual practice of twenty years. Drill holes were bored into the heel bone, and kangaroo tendon was passed through and looped through the Achilles tendon to pull the bone into place. Manual force was required to make the holes by forcing a sharp pointed wire through the bone.

The operation was painful to the plaintiff; and, in addition to the pain experienced, she experienced shock. Medicine had to be given to quiet her nerves and to control the trembling, shock, and pain. Her leg was in a plaster cast from the knee to the toes for two months. About a week after the first operation, two steel wires were forced through the former incision and through the tendon adjacent to the bone to act as a matrix above the bone fragment and hold it down and keep it in position. These wires were put in while the cast was still on and remained about three weeks and were then pulled out. The cast remained on until May 1.

After the cast was removed, eight or ten little bone chips came up through the flesh and worked out through the skin. The effect of these chips was "like the cutting of a knife." "They were very, very painful."

The plaintiff was bedfast for three months following the accident, only occasionally using a wheel chair, and then for another three months used a straight chair with castors with which to get around the house. Seven months after her injury, she was first able to get

around on crutches, which she used for about sixty days; and, after that, a cane.

The ankle still pained her at the time of the trial in December, 1936, or twenty-two months after the accident.·

· At the time of the trial, she was still wearing an elastic bandage around the ankle, which it was necessary to wear all the time in order to give the ankle sufficient support. She is lame; and, when she uses the foot much, it hurts so that she must lie down and rest.

Her shoulder and neck pained and bothered her for several months. Her hip hurt her all down the leg and still hurts her when it gets cold, and her shoulder at times still pains her. At the time of the trial, she was not able to do all of her house work. At that time, she had not been able to sleep without the use of sedatives. She had not recovered from the shock and nervous injury up to that time.

Dr. Heller testified that the fracture tore the attachments, periosteum, and ligaments in that area, some blood vessels, and smaller nerves. He testified that the injury produced pain, of which the plaintiff complained during the operation and from which she suffered before and after the operation. Healing was delayed on account of bone chips. While the reduction of the fracture was considered successful, it was necessary to manipulate her foot; and both active and passive motion caused pain in the ankle, foot, and heel. Limitation of dorsal flexion was approximately ten to fifteen per cent., with about five to ten per cent. limitation in the plantar flexion which might improve some but was permanent.

The callous and scar tissue formed produced tenderness and pain, which may improve some but which remain permanently. When the plaintiff walks on stairs or uneven ground, she will have a definite limitation, permanent in character, due to local pain or tenderness. She walks with some limp.

The petition charges the defendant with general negligence under the *res ipsa loquitur* doctrine; and the plaintiff, upon the trial, proceeded on the theory that the case came within the rules and principles of the *res ipsa loquitur* doctrine and tried the same on that theory. The defendant does not appear from anything in the record to have seriously questioned the fact that the case did come within the *res ipsa loquitur* doctrine.

That the allegations of the petition are sufficient to state a cause of action under that doctrine, see McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557; Glossip v. Kelly, 228 Mo. App. 392, 67 S. W. (2d) 513; Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S. W. (2d) 693; Williams v. St. Louis-San Francisco R. Co., 337 Mo. 667, S. W. (2d) 624; Zimmerman v. Kansas City Public Service Co., 226 Mo. App. 369, 41 S. W. (2d) 579; Thompson v. Kansas City Public Serv. Co. (Mo. App.), 114 S. W. (2d) 145.

The Supreme Court *en banc* has held that the doctrine of *res ipsa*

*loquitur* applies "when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." [McCloskey v. Koplar, *supra*, 329 Mo. 527, l. c. 533, 46 S. W. (2d) 557, l. c. 559.]

Other cases announced the same rule. [Williams v. St. Louis-San Francisco R. Co., *supra*; Zimmerman v. Kansas City Public Service Co., *supra*; Thompson v. Kansas City Public Service Co., *supra*; Glossip v. Kelly, *supra*.]

The case was submitted to the jury on the plaintiff's instructions Nos. 1 and 2 and the defendant's instructions C, D, E, F, G, H, and J and the defendant's requested instruction I as modified.

The plaintiff's instruction No. 1 is as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that defendant was a corporation and owned and operated the Holmes Street car line in Kansas City, Missouri, and that on February 27, 1935, at about 1:00 o'clock p. m., plaintiff boarded one of defendant's southbound Holmes Street cars at 12th and Main Street, in Kansas City, Missouri, and paid defendant the usual and ordinary fare exacted by it for passage thereon, and that plaintiff became a passenger for hire on said car, then it became and was the duty of defendant to plaintiff as a passenger for hire (if you find she was) to exercise the highest degree of care to have the platform and steps of said street car in such condition that the plaintiff in the ordinary use thereof could safely pass over them in alighting from said street car.

If you find that when said car reached 27th and Holmes Street, plaintiff in the usual manner of street car passengers, and in the exercise of ordinary care for her own safety started to and attempted to descend and alight from said street car and that while so doing she stepped from the front platform of said street car and placed one foot upon the step on said car leading from the platform to the street, and that while her foot was on same, said step suddenly gave down with a jolt and plaintiff was thereby caused to fall to the pavement of the street, and if you find that said street car and its appliances was under the exclusive management and control of defendant, and that such giving down of said step with a jolt, if any, was an occurrence unusual and out of the ordinary course of events when persons alight from street cars, then you may infer that the giving down of said step with a jolt, if any, was caused by the failure of defendant to use and exercise the highest degree of care in operating and maintaining said step and appliances, and if you find from all of the evidence that defendant did fail to use the highest degree of care in operating and maintaining said step and appli-

ances, then defendant was negligent, and if you find that such negligence of defendant, if any, directly caused plaintiff to fall from said step and that she thereby sustained injuries, if any, then your verdict should be in favor of plaintiff.

"The term 'highest degree of care' as used in these instructions, means the use, in respect to operating or maintaining said street car steps and appliances, of the highest degree of care practicable by very prudent, careful, skilful and experienced men in the same kind of business."

Instruction 2 for the plaintiff fully advised the jury as to the measure of damages.

For the defendant, instructions C, D, E, F, and G submitted the facts upon which the defendant relied for its defense; instruction H, the credibility of the witnesses and the rules for determining the same; instruction I as modified by the court related to physical facts and conflicting oral testimony; instruction J, among other things, advised the jury that its verdict should be based solely upon the credible testimony of the witnesses as they testified at the trial and upon the law as declared in the instructions of the court.

The defendant's complainants are directed in the main to that part of instruction No. 1, following the preliminary matters therein set out, which reads as follows: "Then you may infer that the giving down of said step with a jolt, if any, was caused by the failure of defendant to use and exercise the highest degree of care in operating and maintaining said step and appliances." It is to be noted, however, that such clause in the instruction is followed immediately by the following: "And if you find from all of the evidence that defendant did fail to use the highest degree of care in operating and maintaining said step and appliances, then defendant was negligent, and if you find that such negligence of defendant, if any, directly caused plaintiff to fall from said step and that she thereby sustained injuries, if any, then your verdict should be in favor of plaintiff," clearly advising the jury that the question of the defendant's negligence was for it to determine under all the evidence, including that of the defendant.

Instruction C for the defendant also defined to the jury the term "burden of proof" and properly directed the jury that the same was upon the plaintiff. Instruction 1 for the plaintiff did not in any particular conflict with instruction C for the defendant.

The defendant's requested instruction I, which the court refused, is as follows:

"The Court instructs the jury that if the testimony of any witness in this case is contrary to or in conflict with the physical facts as detailed in evidence and common observation and experience of the jury, then it is your duty, in making up your verdict, to be governed by such physical facts and common observation and ex-

perience and to ignore and disregard the testimony of any witness in so far as it is in conflict therewith or contrary thereto.''

As modified and given by the court, such instruction is as follows:

''The court instructs the jury that if the testimony of any witness in this case is contrary to or in conflict with the physical facts as detailed in evidence and common observation and experience of the jury, then it is your duty, in making your verdict, to consider such physical facts and common observation and experience and you may ignore and disregard the testimony of any witness in so far as it is in conflict therewith or contrary thereto.''

The defendant upon this appeal assigns error upon the action of the court in giving the plaintiff''s instruction No. 1, in refusing instruction I as asked by it, and in modifying the same and giving the same as modified and upon the action of the trial court in refusing the defendant a new trial for the reason that the verdict of the jury as well as the judgment of the court entered thereon is grossly excessive and overruling the defendant's motion for a new trial.

The defendant vigorously attacks instruction 1 for the plaintiff— and especially that part thereof which told the jury that, if it found that the plaintiff, in the usual manner of street car passengers and in the exercise of ordinary care for her own safety, started to and attempted to alight and descend from said street car when it reached Twenty-seventh and Holmes Streets and that, while so doing, she stepped from the front platform of said street car and placed one foot on a step on said car leading from the platform to the street and that, while her foot was on the same, said step suddenly gave down with a jolt and the plaintiff was thereby caused to fall to the pavement of the street and, if it found that said street car and its appliances were under the exclusive management and control of the defendant and that such giving down of the said step with a jolt, if any, was an occurrence unusual and out of the ordinary course of events when persons alight from street cars, then it might infer that the giving down of said step with a jolt, if any, was caused by the failure of the defendant to use and exercise the highest degree of care in operating said step and appliances, and that, if it found from all of the evidence that the defendant did fail to use the highest degree of care in operating and maintaining said step and appliances, then defendant was negligent and, if it found that such negligence of the defendant, if any, directly caused the plaintiff to fall from said step and that she thereby sustained injuries, if any, then its verdict should be in favor of the plaintiff—as erroneous and, prejudicial to the defendant, in that, among other things, it invades the province of the jury, improperly selects out and comments on parts of the evidence, is argumentative, submits the burden of proof improperly to the jury, places an improper burden of proof on the defendant, lessens the proper burden of proof (the burden of per-

suasion) of the plaintiff, and, because of such errors and other specified, is confusing and misleading to the jury.

We have examined the instruction in question, with the criticisms leveled against it by the defendant in mind and with the view of determining such criticisms; and we are unable to find that any of said criticisms are well made. The instruction follows the instructions usually approved in *res ipsa loquitur* cases.

The petition charges the defendant with general negligence under the *res ipsa loquitur* doctrine. This likewise was the negligence upon which the plaintiff's instruction No. 1 was based, and instruction No. 1 applied the *res ipsa loquitur* doctrine to the facts of the case. It will be noticed that the instruction did not anywhere direct the jury that it should draw an inference of negligence upon the defendant's part from proof of facts submitted by said instruction but merely told it that it could draw an inference from such facts if it found them to exist. It was not required to infer negligence based on such facts, nor was it directed at all as to whether it should or should not make such inferences.

It can not therefore be said that the instruction invaded the province of the jury. The jury was left to make such inference or not in its discretion. There is no contention by the defendant, so far as we have discovered, that the record does not present a case to which the *res ipsa loquitur* doctrine properly applies. It merely complains that the jury was improperly instructed, even though the case be a *res ipsa loquitur* case. It apparently concedes that the facts of the case, as both alleged in the petition and shown in the evidence, make it a proper case for the application of the *res ipsa loquitur* doctrine, under proper instructions.

While the instruction might have defined and placed the burden of proof, the defendant has no cause of complaint if it did not do so. It asked and received an instruction in its own behalf properly denying and placing the burden of proof on the plaintiff. The instruction nowhere embraces a comment on the evidence or any part thereof, nor is it argumentative, confusing, or misleading. The mere fact that it submitted to the jury certain facts in evidence upon which the plaintiff's case was based and told the jury that it might infer negligence on the part of the defendant therefrom if such facts should be found by it to exist does not amount to a comment. The court was required to direct the jury's attention to the facts upon which the plaintiff relied for her *prima facie* case, from which the defendant's negligence might be established and inferred, and to call for its finding thereon.

It is always proper for the court to declare to the jury the effect it may give to the facts in proof as evidence. [Tyler v. Hall, 106 Mo. 313, 17 S. W. 319; Stanton v. Jones, 332 Mo. 631, 59 S. W. (2d) 648; Ward v. Fessler (Mo.), 252 S. W. 667, 671; Copeland v.

Wabash R. Co., 175 Mo. 650, 75 S. W. 106; Tatlow v. Crawford, 189 Mo. App. 184, 174 S. W. 439; Offutt v. Battagala (Mo. App.), 44 S. W. (2d) 202, 204; Price v. St. Louis I. M. & S. R. Co., 185 Mo. App. 432, 170 S. W. 925; Gharst v. St. Louis Transit Co., 115 Mo. App. 403, 91 S. W. 453.]

In Ward v. Fessler, *supra,* it is said, l. c. 671 or 252 S. W.:

". . . the plaintiff is confused as to what is meant by comment upon the evidence. It is always proper for the court to tell the jury what is the legal effect of facts in proof. [Price v. Railroad, 185 Mo. App. 432, loc. cit. 439, 170 S. W. 925; Tyler v. Hall, 106 Mo. 313, loc. cit. 323, 17 S. W. 319, 27 Am. St. Rep. 337.]

"It is not proper for the court, in an instruction, to give undue prominence to certain parts of the evidence upon which the jury must pass in finding the facts. That is a comment upon the evidence, but that is very different from telling the jury what is the legal effect of certain facts in proof. The court was obliged to direct the jury's attention to the facts upon which the plaintiff relied to establish the defendant's negligence. This court said, in the case of State v. Pyscher, 179 Mo. loc. cit. 159, 77 S. W. 841:

" 'In the trial of a case, the state or defendant may offer testimony upon any particular fact, and it is not a comment upon the testimony to especially refer to that fact; but it would be otherwise if the court should undertake to refer specially to items of evidence, as to its weight, etc., in support of the proof of the fact itself.' "

The foregoing from Ward v. Fessler, *supra,* was quoted approvingly by the Supreme Court in the recent case of Stanton v. Jones, *supra.*

The instruction as given conforms to the one suggested in the recent case of Harke v. Haase, 335 Mo. 1104, 75 S. W. (2d) 1001, as one proper to be given in *res ipsa loquitur* cases. In that case, the Supreme Court, upon reversing and remanding it for a new trial, after first pointing out some of the essential differences between *res ipsa loquitur* cases and specific negligence cases, suggests certain instructions as suitable in *res ipsa loquitur* cases for use upon a retrial. Among those suggested are found the following: "The court instructs the jury that, if you find and believe from the evidence that on or about the 1st day of February, 1930, plaintiff was a pedestrian and as such was on the sidewalk on the southwest corner of Twenty-second street and Morgan street, and if you further find that an automobile owned and being driven by the defendant ran over and upon the aforesaid sidewalk striking plaintiff and injuring him, if you so find—" l. c. 1002 of 75 S. W. (2d)—"then you are instructed that such facts (if you believe them to be true) are sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent, and you may so find, unless you find and believe from other facts and circumstances in evidence that the

440

occurrence was not due to the defendant's negligence, and if you do find and believe from all of the evidence in the case that the defendant was negligent and that the plaintiff's injuries, if any, were directly caused by the defendant's negligence, then your verdict should be for the plaintiff." [l. c. 1004 of 75 S. W. (2d).]

There is no substantial difference between the instruction suggested by the Supreme Court in the Harke Case, *supra,* and the instruction No. 1 for the plaintiff in this case; and that court may therefore be said to stand sponsor for instruction No. 1 for the plaintiff in this case.

The defendant criticises such instruction thus set out for use on retrial in the Harke Case as a proper instruction in *res ipsa loquitur* cases as *obiter dictum* on the part of the court and as the work of the commissioner who wrote the opinion. It appears to have been concurred in by all of the judges of the court, except the one who concurred in the result only. It does not appear from his brief dissenting opinion in the record that his dissent was in any particular based upon the suggested instruction. Anyhow, such instruction seems to be in line with the spirit and reason of the law; and it has never been withdrawn or repudiated by the Supreme Court. Whatever else it may have been, it appears to have been sound logic, good reason, and sound law. Until such suggestions are withdrawn by the Supreme Court, we feel it our duty to follow them.

Furthermore, in the recent case of Thompson v. Kansas City Public Service Co., *supra,* an instruction was involved which covered the central point of the objection of the defendant to the instruction in this case. In that case, this court followed the suggestions in the Harke Case, *supra,* and approved the instruction complained of, which was practically the same in all essential particulars as instruction No. 1 for the plaintiff in this case.

The defendant upon this appeal roughly and roundly denounces the opinion by this court in the Thompson Case, *supra,* in a manner that does it no credit. On application by the defendant to the Supreme Court of Missouri for *certiorari* quashing the opinion and record of this court in the latter case, *certiorari* was denied by the Supreme Court; and that is sufficient answer to all of the criticism of the opinion in that case made by the defendant upon this appeal.

The defendant cites many cases in support of its claim that instruction No. 1 for the plaintiff is erroneous but relies mainly on the following cases: Kennedy v. Phillips, 319 Mo. 573, 5 S. W. (2d) 33; McCloskey v. Koplar, *supra,* and cases therein cited, as it did in the Thompson Case, *supra.* We are not of the opinion, however, that any of the cases cited by the defendant in support of its claim is controlling upon the questions at issue which are decisive of this case, at least since the opinion in the Harke Case, *supra,* which is by the court *en banc* and later in point of time; and such cases were not

found by the Supreme Court in its denial of the defendant's application for *certiorari* in the Thompson Case to be the last controlling decisions of that court upon the questions at issue involving the propriety of the instruction complained of in that case, which was practically the same as the plaintiff's instruction No. 1 in this case.

One of the distinctive features of the doctrine of *res ipsa loquitur* is that it relieves the plaintiff from pleading and proving specific negligence without, however, relieving from pleading and proving general negligence—that is, the injury and such attendant circumstances as will support an inference of negligence. When such requirements are met, the burden of rebutting the inference and preventing the jury from finding negligence based upon such inference is upon the defendant. [Gordon v. Muehling Packing Co., *supra*; Glossip v. Kelly, *supra*.]

In Harke v. Haase, *supra*, 335 Mo. 1104, l. c. 1110 and 1111, 75 S. W. (2d) 1001, l. c. 1004 and 1003, it is said: "The principal difference between a *res ipsa loquitur* case and a specific negligence case would seem to be that—" in a *res ipsa loquitur* case—" the very basis of liability, the existence of some negligence, may be shown by a particular kind of circumstantial evidence, namely, an unusual occurrence of a character which ordinarily results only from negligence (both in pleading and proof), and from which, therefore, negligence is a reasonable inference; while in a specific negligence case the careless acts or omissions which constitute negligence must be stated and proven. In other words, in a *res ipsa* case the ultimate fact, some kind of negligence is inferred without any evidential facts except the unusual occurrence itself; while in a specific negligence case there must be evidential facts sufficient to show some negligent acts or omissions which were the proximate cause of the occurrence." In a *res ipsa loquitur* case, the plaintiff "has the burden of proof of showing that the defendant was guilty of some negligence which caused his injury, but he is entitled to have the jury know that this may be proven circumstantially. This is true of any general negligence or *res ipsa* case." Reduced to simple terms, a *res ipsa loquitur* case merely means "that negligence can be proved by circumstantial evidence and that certain circumstances, as to the character of the accident, are sufficient to take the case to the jury."

". . . *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking; but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." [Sweeney v. Erving, 228 U. S. 233 (U. S. S. C.), l. c. 240.]

The Supreme Court of our State in Noce v. St. Louis-San Francisco R. Co., 337 Mo. 689, 85 S. W. (2d) 637, l. c. 641, quoted approvingly from the Supreme Court of the United States in Sweeney v. Erving, *supra,* 228 U. S. 233, l. c. 238, the following: "The general rule in actions of negligence is that the mere proof of an 'accident' (using the word in the loose and popular sense) does not raise any presumption of negligence; but in the application of this rule, it is recognized that there is a class of cases where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases, it is said, *res ipsa loquitur*—the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence." Our Missouri Supreme Court in the Noce Case continues: "While concededly the burden is upon plaintiff to show that the injury sustained was 'attributable to negligence' on the part of the carrier, that is, that it was caused by the 'negligence of' the defendant carrier's 'officers, agents or employees' or 'by reason of' a 'defect or insufficiency, due to its negligence, in its cars, engines,' etc. (Federal Employers' Liability Act, 45 U. S. C. A., sec. 51) 'the prevailing, if not unanimous view is that the rule of *res ipsa loquitur* prescribes, as a substitute for specific proof, one method by which plaintiff may prove' such negligence. [45 C. J., p. 1198.] Again, at 45 C. J., pp. 1196, 1197, the matter is stated in this way: 'This rule (*res ipsa loquitur*) when applicable to the facts and circumstances of a particular case is not intended to and does not dispense with proof of negligence on the part of the party charged, but on the contrary being a substitute for specific proof of acts or omissions constituting negligence, it merely prescribes one method by which plaintiff may prove the negligence charged against defendant and determines and regulates what shall be *prima facie* evidence thereof.' "

In Inland and Seaboard Coasting Co. v. Tolson, 139 U. S. 551, l. c. 554 and 555, 35 L. Ed. 270, 271, it is said: "The whole effect of the instruction in question, as applicable to the case before the jury, was that if the steamboat, on a calm day and in smooth water, was thrown with such force against a wharf properly built, as to tear up some of the planks of the flooring, this would be *prima facie* evidence of negligence on the part of the defendant's agents in making the landing, unless upon the whole evidence in the case this *prima facie* evidence was rebutted. As such damage to a wharf is not ordinarily done by a steamboat under control of her officers and carefully managed by them, evidence that such damage was done in this case was

*prima facie,* and, if unexplained, sufficient evidence of negligence on their part, and the jury might properly be so instructed.''

It must therefore be ruled that, upon the record in this case, instruction No. 1 for the plaintiff was proper; and the complaints of the defendant with reference thereto must be denied.

The next complaint made by the defendant relates to the refusal of the trial court to give its instruction I as requested and to its modifying such requested instruction and giving it as modified. We are unable to find wherein such complaint is meritorious.

The defendant contends that the evidence of the plaintiff and her witnesses was wholly at variance with the physical facts and in derogation of the immutable laws of physics and was inherently impossible and unbelievable and was so opposed to all reasonable probabilities as to be manifestly false and that the court is not required to stultify itself by giving credence and weight thereto. In other words, it contends that it was physically impossible for the plaintiff to descend from the defendant's car in the manner she testified and to fall therefrom and be injured and that her testimony was unbelievable and that of her witnesses who said that they saw her fall from the steps of the car to the pavement below was physically impossible and unbelievable. It assumes further that the plaintiff's witnesses were not in a position to see her when she fell, although such witnesses testified that they were in a position to see her and did see her fall. Just what is impossible about the testimony of the plaintiff and her witnesses, we are unable to see. We could just as well say that the testimony of the defendant's witnesses was so impossible and opposed to all reasonable probabilities as to be manifestly false. The plaintiff's testimony consisted of a statement as to the manner in which she descended over the steps leading from the front entrance of the defendant's car, over which she was supposed to descend to the pavement, and the manner in which, when she stepped upon the lower step, it gave way and fell a distance of about two inches with such force as to jostle her and cause her to lose hold of the central upright bar to which she had been holding with her left hand and to throw her from the step to the pavement. Just what is impossible about such version is not made to appear. That she could have fallen in that manner appears to be possible and not only possible but probable. The defendant's witnesses testified to the contrary and stated that, when the plaintiff came down the steps from the front entrance, she stepped on the pavement with safety and that, after taking two or three steps on the pavement, she fell. The evidence of both parties seems to be that, when she fell, she fell outstretched on the pavement with one knee and leg caught up under her body and the other leg and her arm extended. Just what there was to make her fall in that manner with her leg crumpled under her, if she reached the pavement in safety, does not

444

appear. It is more believable, if she fell in the manner in which she did, with one leg crumpled under her, that she must have been thrown by some unexpected force from the steps to the pavement. There are no physical facts in the case other than those testified to by the witnesses. There are no agreed physical facts, except perhaps those relating to the position in which the plaintiff fell upon the pavement with one leg crumpled under her. The physical facts detailed by the plaintiff as to the manner in which she came down the steps of the front entrance and was thrown therefrom are not agreed to by the defendant or conceded by it. Neither are the physical facts to which the defendant's witnesses testified (to-wit, that the plaintiff descended such steps safely and reached the pavement safely and fell only after she had taken two or three steps on the pavement) conceded by the plaintiff or admitted by her to be true. The credibility of the plaintiff and her witnesses and of the testimony which they gave and also the credibility of the defendant's witnesses and the testimony which they gave were for the jury under an instruction asked by the defendant and given in the defendant's behalf.

The jury having found for the plaintiff and against the defendant, it is to be presumed that it found that the plainiff and her witnesses had told the truth about the matter and that the defendant's witnesses had not.

In 10 R. C. L., art. 198, pp. 1008 and 1009, it is said: "It requires an extraordinary case to authorize the court to regard sworn testimony as manifestly impossible and untrue. . . . So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other. " [Schupback v. Meshevsky (Mo.), 300 S. W. 465; Dickinson v. Abernathy Furniture Co. (Mo. App.), 96 S. W. (2d) 1086.]

The rule seems to be and upon principle should be that the testimony of a witness may be rejected upon the legal conclusion that such testimony is opposed to physical law only when such legal conclusion is so clear and irrefutable that no room is left for the entertainment by reasonable minds of any other conclusion. [Dickinson v. Abernathy Furniture Co., *supra*; Kibble v. Quincy O. & K. C. R. Co., 285 Mo. 603, 227 S. W. 42.]

As a general rule, the credibility of witnesses and the truth of their testimony are for the determination of and within the exclusive province of the jury. [Dickson v. Abernathy Furniture Co., *supra*; Holzemer v. Metropolitan St. R. Co., 261 Mo. 379, 169 S. W. 102; Steele v. Kansas City Southern R. Co., 302 Mo. 207, 257 S. W. 756.]

In Doyle v. St. Louis Merchants' Bridge Terminal R. Co., 326 Mo. 425, 31 S. W. (2d) 1010, l. c. 1012, the Supreme Court, in affirming a judgment for the plaintiff and in holding that the plaintiff's evidence was not contrary to physical facts and unbelievable, says, "We cannot say as a matter of law that plaintiff's history of the manner of the occurrence was untrue or impossible."

Neither can we say in this case that the plaintiff's version of the manner in which she was injured was untrue or impossible. Common knowledge advises us that even inexplicable happenings do occur.

It is further said in Doyle v. St. Louis Merchants' Bridge Terminal R. Co., *supra*, l. c. 1012, that, unless it can be said that the evidence was opposed to the immutable laws of physics, it can not be declared to be fiction; that the courts are reluctant to say that declared facts are manifestly impossible or untrue; and that it could not be said in that case that the evidence lacked weight or credence.

Neither can it be said in this case that the plaintiff's evidence or that of her witnesses lacked weight or credence. The evidence of the plaintiff and her witnesses possessed probative force and was sufficient for the submission of the plaintiff's case to the jury and to support the verdict of the jury rendered by the jury in her favor.

In Person v. City of Independence (Mo. App.), 114 S. W. (2d) 175, the court quoted approvingly from the case of Hardin v. Illinois Centr. R. Co., 334 Mo. 1169, 70 S. W. (2d) 1075, l. c. 1079, the following: " 'But the province of the jury to pass on facts must not be invaded and however improbable the testimony of the witness who testifies to a fact, not in itself impossible, may appear in the ordinary course of events, its credibility is for the jury.' [64 C. J. 357, par. 354.]"

This court in its opinion in the Person Case, *supra*, l. c. 180 of 114 S. W. (2d), in commenting on the opinion in the Hardin Case, *supra*, said: "It is held therein that the court might properly reject evidence which is contrary to physical facts or to known physical laws or which is the result of evident mistake or, in short, when the evidence itself or other established facts disclose its infirmity, but that so long as reasonable minds could fairly and honestly have two views of the matter, from all of the facts adduced by the plaintiff, then her evidence was substantial evidence upon her theory and it was for the jury to weigh and determine it."

In this case, the plaintiff's testimony and that of her witnesses corroborating it were not such as reasonable minds would unanimously reject. Upon the other hand, the jury unanimously accepted her testimony as to the manner in which her injuries came about and rejected *in toto* the testimony of the defendant. There was no concert of testimony as to the material physical facts, but there was a direct contradiction between the evidence of the witnesses for the

plaintiff and that of those for the defendant as to such facts, except as to the position into which the plaintiff was thrown upon the pavement. There were no physical facts in the case that could be said to be established except those testified to by the plaintiff, and they were established by the verdict of the jury. None of the physical facts testified to by the defendant, except the position in which the plaintiff fell on the pavement, may be said to have been established upon the trial; for the jury rejected all of them; and none of the same were admitted by the plaintiff. There was therefore no place in the case for instruction I as requested. Nor was there any place in the case for instruction I as modified and given by the court. However, such instruction as modified and given was not harmful or prejudicial to the defendant; and no reversible error can be based upon its giving.

The defendant's third complaint relates to the action of the trial court in refusing the defendant a new trial for the reason that the verdict of the jury and the judgment of the court were grossly excessive. We have examined the record in detail to ascertain if anything can be found therein that justifies the claim upon the part of the defendant of the excessiveness of the verdict. Considering the age of the plaintiff, the character of the injuries sustained, the pain and suffering endured, the physical condition in which she was left at the time of the trial; considering that such condition, in the opinion of people entitled to give an opinion, was permanent and lasting; and considering the time that she spent in the hospital and that she spent at home in bed or in rolling chairs and the time that she was unable to work, to exercise herself, or to do her housework or daily work as she had formerly done—we are of the opinion that the verdict is not excessive. We find nothing in the record calculated to inflame the minds and prejudices of the jurors against the defendant so that they might be inclined to render an excessive verdict. We find nothing in the record to indicate that the verdict is any other than the calm and deliberate judgment of the jurors who signed it. We therefore decline to interfere with the judgment below on the ground that it is excessive or with the verdict of the jury, upon which it is based, as excessive.

The last and final complaint made by the defendant relates to the action of the trial court in overruling its motion for a new trial. The grounds upon which its said complaint are based, as they are set out in the brief, have been herein previously passed on adversely to the defendant's contentions in the disposition of the various points raised and presented by the defendant in its briefs. We find nothing advanced under this point to justify a departure from our former conclusions with reference to said grounds, and the complaint is therefore denied.

As we find no reversible error upon the trial in the court below

appearing in the record and as it appears that the judgment of the court below was just and was for the proper party, such judgment should be and is affirmed. All concur.